STATE EX REL. BLANK, Respondent, vs. GRAMLING and others, Appellants.

*September 11—October 8, 1935.*

For the appellants the cause was submitted on the brief of the *Attorney General* and *Warren H. Resh,* assistant attorney general.

*Carl H. Juergens* of Milwaukee, for the respondent.

FOWLER, J. The defendants, constituting the Wisconsin State Board of Medical Examiners (hereinafter referred to as "the board"), appeal from an order denying their motion

to quash an alternative writ of *mandamus,* and providing that unless they make return before a specified date, a peremptory writ issue in the terms of the alternative writ.

The relator's claim to right to have such hearing is based upon the fact that he, as a graduate of said medical school, licensed to practice medicine and surgery in Illinois, has made application to the board for issuance to him of a license ·to authorize him to practice medicine and surgery in this state under the provision of sec. 147.17, Stats., which provides · that the board "may license without examination a person holding a license to practice medicine and surgery . . . in another state, if in such state the requirements imposed are equivalent to those of this state, upon presentation of the license and a diploma from a reputable professional college." The board refuses to issue such license to him because it does not recognize said school as a reputable medical college.

The board contends that its motion to quash the alternative writ should have been granted because, (1) its command is too broad in that it directs that the testimony presented at the hearing be taken and transcribed by a reporter with the qualifications as stated in the writ; (2) the petition shows that the board has heretofore held a hearing upon due notice to determine the status of said school as a reputable medical college; (3) if as the petition alleges it was established before the board that the said medical school is a reputable medical college and the board has arbitrarily refused to so determine, the relator's remedy, if any he has, is to *mandamus* the board to grant him a license.

(1) The contention here is that an alternative writ of *mandamus* will be quashed if it demands more than the relator is entitled to have. Authorities are cited in support of the proposition which we do not cite because we have not examined them. The relator does not say or cite anything against the contention. He only says in response to it that he does not insist that a "court reporter" be employed, and that he has no objection to use of a stenographer regularly

employed by the board, if such stenographer is a competent phonographic reporter.

It seems too elementary to require citations to support it that the court cannot by *mandamus* compel an administrative board to take down testimony given before it by a stenographic reporter in absence of a statute requiring it to do so. It may take testimony and keep its records in "longhand" instead of "shorthand" if it wants to. The circuit courts of. this state in the early day of this state so took down testimony, and some courts of lower rank within the state so take it now. Want of power of the courts to prescribe the way in which administrative bodies shall act is sufficiently discussed herein under (2). That the writ is too broad is obvious. As the relator has not seen fit even to attempt to meet the proposition that if the command of an alternative writ of *mandamus* is too broad the writ will be quashed, we assume for the purposes of this suit merely, and not to serve as a precedent, that such is the rule. The order appealed from specifically provides that the alternative writ shall be made peremptory unless the defendant makes return. It may be that the relator might have amended the writ upon the objection being made that its commands exceeded the power of the court to grant, and thus have avoided the quashing of it. We consider neither this point nor the extent or limitation of the rule contended for by the defendant. Respondents on appeal cannot complain if propositions of appellants are taken as confessed which they do not undertake to refute.

(2) The petition states that after several attempts by the relator to get the defendant board to grant a hearing to determine whether the said medical school was a reputable medical college, all which it alleges was arbitrary and capriciously refused for the reason stated by the board, that it did not recognize said college as a reputable medical college, a meeting of the board was held in Milwaukee in June, 1934, at which the relator appeared "but that he was not given his right to a legal hearing," at which "the officers of said

Chicago Medical School appeared before said board, . . . were given a hearing, and the matter of the reputability of said Chicago Medical School was taken under advisement." Thereafter due to protests of the relator and his attorney, the board, on August 18, 1934, notified the relator's attorney, who had previously taken up with the board the matter of the relator's right to a hearing, that the board would "hold a special hearing regarding recognizing the Chicago Medical School," at a specified place in Green Bay on September 12, 1934, at 10 o'clock a. m., and that he might bring the relator with him at the meeting if he desired to be present. At said meeting three members of the faculty of the Chicago Medical School were present and were given a hearing, but the board refused to allow the relator or his attorney to be present "while said members were before the board." The relator's attorney then demanded of said board "a legal hearing for your [the] petitioner, and that the testimony at such hearing be reduced to writing by a qualified stenographic reporter to allow transcription thereof for the purposes of a record of the proceedings and any necessary judicial review" and the members refused "such procedure." The relator's attorney then produced documentary evidence which showed according to the petition that said medical school "was a reputable medical college by definition of said sec. 147.16, Stats." It is also stated that the testimony of the members of the faculty of said school also so showed. The petition then states that, pursuant to a malicious conspiracy among its members, the board neglected and refused to recognize the reputability of said school.

The general rule as to the procedure of medical boards in determining the status of a medical school is stated as follows in Corpus Juris and Ruling Case Law:

"The board may adjudicate the status of a medical college as to reputability either of its own motion, or on petition of the college; and where the law does not define the method by

which the board shall proceed to determine the reputability of a college, it may perform its duty in that regard in any reasonable way it may deem proper." 48 C. J. p. 1093, § 59.

"The board is not bound by the ordinary rules of procedure or evidence that apply in a court of law or equity." 21 R. C. L. p. 367, § 13.

The function of the court in controlling the action of such a board by *mandamus* was considered by this court in *State ex rel. Coffey v. Chittenden,* 112 Wis. 569, 88 N. W. 587, in which *mandamus* was resorted to to compel the state board of dental examiners to grant a license to practice dentistry. The opinion in that case states, page 574, as follows:

"It is elementary that in *mandamus* proceedings to coerce . . . any . . . board in the exercise of . . . *quasi*-judicial power, the sole legitimate purpose thereof is to set such . . . board in motion; to command . . . it to act, not how to act, to exercise the judicial power vested in . . . it; not to control as to the conclusion to be reached." At page 586 of the same opinion it is stated:

"Since it [the law] requires the board to pass upon the reputability of the school in circumstances like those in this case, and places no limit upon the methods by which it shall gather information bearing on the subject for decision, it may proceed in any reasonable way, and candidates for licenses must submit to its judgments unless they transgress the boundaries of reason and common sense."

The relator relies on the case of *State ex rel. Milwaukee Medical College v. Chittenden,* 127 Wis. 468, 107 N. W. 500, as sustaining his contention. We find nothing in it in conflict with the rule above stated relative to control by the courts of actions of a medical board respecting its proceedings connected with the granting of licenses. The Milwaukee Medical College was recognized by the state dental board as a reputable medical college. Another college preferred charges against it claiming it was not reputable. The board, without giving notice to the Milwaukee Medical College or giving it an opportunity to appear before it, "resolved" that

the college "dental department" was not a "reputable dental school." The college brought *certiorari* to review its proceedings and determination. The circuit court held the resolution void, and this court affirmed its judgment on the ground that the determination was made without notice to the college and giving it an opportunity to be heard upon the specified charges presented upon which the determination was based. This was held to be want of the due process secured by the Fourteenth amendment to the United States constitution. This is the whole point of the case.

In the instant case the board gave reasonable notice to both the Chicago Medical School and the relator who demanded the hearing. Three members of the medical school faculty and the relator appeared before the board. Three members of the faculty were heard, and there is no allegation that any evidence offered by them was rejected or that they were denied opportunity to present evidence. Such evidence as the relator presented was received. There is no allegation that he was prevented from testifying or presenting any evidence or witnesses for examination that he wished to present. There was thus no denial of due process.

. The relator's complaint is, not that he was not given notice, or that he was denied opportunity to establish his claim, but that he and his attorney were not allowed by the board to be present when the members of the medical school presented their evidence, and that his demands for another hearing and to have a competent phonographic reporter take down and transcribe the testimony and to be permitted to be present with his attorney during the entire presentation and receipt of the evidence placed before the board or considered by it were denied. The relator was not entitled as of right to be present before the board when witnesses were being heard. His exclusion was not a denial of due process. Administrative boards, even though their functions are *quasi*-judicial

and involve the determination of questions of fact, are not bound to conduct their proceedings as courts ordinarily conduct theirs. The practices of our public service and industrial commissions as matter of common knowledge afford illustrations of this, and their departure from court procedure has never been claimed to be a denial of due process, as far as we are aware.

(3) So far we have treated the case from the standpoint that if the relator was entitled to a hearing before the board on the question of the reputability of the medical school of which he is a graduate, the hearing given him did not deny him "due process of law" because he had due notice of the hearing, and the board's manner of conducting the hearing given did not constitute a denial of such process. However, it would seem that he was not entitled as matter of right to have the board grant him a hearing. The case is distinguishable from the *State ex rel. Milwaukee Medical College Case, supra,* in that in that case the status of the college before the board was that of a reputable medical college. That conceded status, theretofore always recognized, was a thing of value to the college, and deprivation of it was a denial of a property right. That right could only be taken away from it by due process of law. In the instant case the Chicago Medical School had never been recognized by the board as a reputable medical college. Nothing would have been taken away from the college, and certainly nothing was taken away from the relator, by denying the relator's request for a hearing. The board had theretofore determined that the college was not reputable, and it does not appear that its previous determination was not based upon facts sufficient to support it. In this situation, if the relator was entitled to a hearing before the board for reconsideration of the matter, so was every other graduate of the college that wanted a license in Wisconsin. If the facts are such that the school is reputable

under our statute, or was so at the time the relator received his diploma from it, if that is the controlling fact in connection with the granting of a license to him, and that is the only fact by reason of which he is denied a license, his remedy is not to *mandamus* the board to grant him a hearing, but to *mandamus* it to grant him a license. If the board's determination that the Chicago Medical School was not reputable was purely arbitrary, its determination would not warrant the denial of a license, and the relator would, on showing to the court that the school was reputable under the statute, and that the board's determination was without facts or reason to support it and wholly arbitrary and unwarranted, be entitled to his license, if the fact that the school was not recognized as reputable by the board was the sole basis of the denial. Such was the procedure in *State ex rel. Coffey v. Chittenden, supra.*

*By the Court.*—The order of the circuit court is reversed, and the record remanded with instructions to quash the alternative writ.