CHAROLAIS BREEDING RANCHES, LTD., Plaintiff-Respondent, v. FPC SECURITIES CORPORATION, and another, Defendants-Appellants.

Court of Appeals

*No. 78–097. Submitted on briefs January 20, 1979.—*
*Decided April 27, 1979.*
(Also reported in 279 N.W.2d 493.)

98

For the appellants the cause was submitted on the briefs of *Aberg, Jorgensen & Purcell* of Madison.

For the respondent the cause was submitted on the brief of *Herbon & McLaughlin* of Milwaukee.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J. Defendants FPC Securities Corp. (FPC) and A. W. Hemmings, the president of FPC, appeal from the order of the circuit court for Dane County which overruled defendants' demurrer to the complaint.

This action was commenced in 1974. The complaint, so far as material, alleges claims for tortious interference by defendants with contracts between plaintiff Charolais Breeding Ranches (CBR) and its investors, for return of commissions paid by CBR on the same contracts sold by FPC for CBR and for damages for fraudulent misrepresentation to investors.

The complaint alleges the following facts as to the first claim: CBR engaged FPC as its sales agent in 1973 to offer registered investment contract securities to prospective investors. The contracts were for the sale of herds of purebreed female Charolais cattle. As part of the investment contract, each purchaser received a ten-year contract with CBR for the care, breeding, maintenance and feeding of the cattle and their progeny. The investment contracts sold for about $35,000 each. FPC made about thirty-five sales on behalf of CBR and received commissions of $109,888 based on 9% of the full purchase price of each contract. The contracts were sold, however, on down payments of less than 30% of the purchase price with the balance payable over a ten-year period including semi-annual interest payments.

Plaintiff was forced to refinance its operations due to financial problems. In July, 1974 CBR cleared an exempt offering to its investors for that purpose with

the Wisconsin Commissioner of Securities, using the credit of its investors as collateral for bank loans. It is alleged that "such refinancing proposal was largely proposed by and negotiated with defendants." The complaint alleges that Hemmings, as FPC's president, advised CBR that neither he nor FPC would recommend the refinancing proposal to investors to whom FPC had sold contracts, and that he would remain "neutral" and would "allow CBR to contact such investors on its own behalf."

It is alleged that FPC employees, including Hemmings, contacted the investors and advised them not to involve themselves in the refinancing proposal and to withhold the next interest installment due under the contracts. It is alleged that this was done maliciously with intent to cause financial harm to CBR and with knowledge that the interest payments were essential to its refinancing proposal. It is alleged that thirty-three investors refused to pay their interest with the result that CBR defaulted on a bank loan against which the interest was pledged and destroyed a line of credit CBR had been negotiating.

The second claim is based on allegations that defendants were allowed a commission on the full price of each contract, "in contemplation of the program continuing for its 10 year normal term, and the sales price on each contract being paid in full, otherwise such commissions . . . amounted to 30% of the downpayment funds actually received," contrary to unspecified regulations of the Commissioner of Securities. The complaint alleges that the commissions "were not properly earned, since defendants wrongfully caused premature termination of the investment contracts upon which such commissions were initially based."

Plaintiff's third claim is based on allegations that the defendants falsely misrepresented to FPC investors,

among other things, that CBR's manager of ranch and breeding operations had left CBR's employ.

Defendants demurred in 1974 to each claim on grounds that no claim is stated upon which relief can be granted. The demurrer was brought on for hearing in 1977.

## A. *Appealability of Order Overruling Demurrer*

Plaintiff urges that we summarily dismiss this appeal under rule 809.21(1), Stats., because an order overruling a demurrer is not a final order and therefore is not appealable as a matter of right. Section 808.03(1), Stats., provides that a final order may be appealed to the court of appeals as a matter of right and defines a final order as one which disposes of the entire matter in litigation as to one or both of the parties. An order overruling a demurrer is not a final order by that definition.

Section 808.03(1), Stats., was created by ch. 187, Laws of 1977, effective August 1, 1978. The order from which this appeal was taken was filed June 1, 1978 and therefore sec. 808.03(1) does not apply. Section 817.33(3)(e), Stats. 1975, prior to its repeal by sec. 118, ch. 187, Laws of 1977, provided that an order overruling a motion to dismiss under sec. 802.06(2), Stats., was appealable. A motion to dismiss under the latter section is the successor to the demurrer authorized by sec. 263.06, Stats. 1973.

As the order was filed and was appealable before the effective date of sec. 808.03(1), Stats., the appeal will not be dismissed.

## B. *Issues on Review of Demurrer*

A demurrer to a complaint admits the facts which are well-pleaded but denies that they have the legal con-

sequences asserted by the plaintiff. The question is whether any cause of action has been stated on which relief may be granted. The plaintiff is bound by the facts he alleges but not by his theory of recovery. Pleadings are liberally construed with a view to substantial justice between the parties and are entitled to all reasonable inferences in favor of the pleadings which may be drawn from the facts pleaded. *See Int'l Found. Emp. Ben. Plans v: Brookfield,* 74 Wis.2d 544, 548, 549, 247 N.W.2d 129 (1976).

### C. *Inducing Non-Performance of Contract Terminable at Will*

Defendants contend that the contracts between CBR and its investors are terminable by the investors at will and that *People's Land & Mfg. Co. v. Beyer,* 161 Wis. 349, 154 N.W. 382 (1915), holds that there can be no liability for inducing the breach of a contract terminable at will. We assume without deciding that the contracts are terminable at will.

*People's Land & Mfg. Co. v. Beyer* is not in point. In that case a landlord persuaded his tenants to discontinue purchasing electricity from the plaintiff utility and to use the service of a rival company. The landlord was motivated by hostility toward the president of plaintiff. The tenants could discontinue plaintiff's service on reasonable notice. The court's reasoning shows that, but for a privilege to do so, the landlord's interference with plaintiff's service to others would have been tortious. The court said,

It may be assumed that plaintiff had and has a legal right to sell its current to those who desired to use it and that such a right is entitled to legal protection. It could lawfully be interfered with, however, by one who had an

equal or superior right. The general rule is that whatever a man may lawfully do on his own property under any circumstances, he may do regardless of the motive for his conduct. 161 Wis. 349, 352 (citations omitted).

There can be tort liability for interference with a contract terminable at will. *Johnson v. Aetna Life Ins. Co.,* 158 Wis. 56, 147 N.W. 32 (1914) ; *Mendelson v. Blatz Brewing Co.,* 9 Wis.2d 487, 101 N.W.2d 805 (1960). *Johnson* and *Mendelson,* as defendants note, involved employment contracts terminable at will. A cause of action for tortious interference with contracts terminable at will, however, is not, contrary to defendants' contention, limited to employment contracts. The court in *Mendelson* relied on Prosser, *Law of Torts* (2d Ed.), sec. 106 at 726,[1] where it is said,

"However, eminent legal writers to the contrary notwithstanding, the overwhelming majority of the cases have held that interference with employments *or other contracts terminable at will* is actionable, since until it is terminated the contract is a subsisting relation, of value to the plaintiff, and presumably to continue in effect. The possibility of termination does, however, bear upon the issue of the damages sustained, and it must be taken into account in determining the defendant's privilege to interfere." 9 Wis.2d 487, 491 (emphasis supplied).

The court in *Mendelson* applied *Restatement of Torts* sec. 766(a),[2] at 49 (1939), to the employment contract before it. Section 766(a) provides that "one who, without a privilege to do so, induces or otherwise purposely

---

[1] Now Prosser, *Law of Torts,* (4th Ed.), sec. 129 at 932, 933 (1971).

[2] *Restatement of Torts,* sec. 766 at 49, in its entirety provides,

causes a third person not to perform a contract with another . . . is liable to the other for the harm caused thereby."

The successor to *Restatement of Torts* sec. 766, is *Restatement (Second) of Torts* sec. 766 at 7 (1979), which provides,

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Comment f to sec. 766 at 10 of *Restatement (Second) of Torts* states that the third person may have a defense against an action on the contract, such as the statute of frauds, formal defects and infancy by which he may avoid liability for breach but, "The defendant actor is not, however, for that reason free to interfere with performance of the contract before it is avoided." Comment g continues,

A similar situation exists with a contract that, by its terms or otherwise, permits the third person to terminate the agreement at will. Until he has so terminated it, the contract is valid and subsisting, and the defendant may not improperly interfere with it. The fact that the contract is terminable at will, however, is to be taken into account in determining the damages that the plaintiff has suffered by reason of its breach.

---

Except as stated in Section 698, one who, without a privilege to do so, induces or otherwise purposely causes a third person not to

  (a) perform a contract with another, or

  (b) enter into or continue a business relation with another

is liable to the other for the harm caused thereby.

The position adopted by comment f to sec. 766 at 10 of the *Restatement (Second) of Torts* regarding the effect of the availability of defenses, such as the statute of frauds, on the tort of wrongful interference is the law of this state. *Bitzke v. Folger*, 231 Wis. 513, 522, 523, 286 N.W. 36 (1939), held that as long as the party to a contract with the plaintiff was willing and ready to perform even though the contract was unenforceable by the plaintiff because of the statute of frauds, the defendant had no right to induce that party to terminate or refuse performance of the contract. The court said, "Even though some part of the agreements may have been legally unenforceable, nevertheless, the malicious procurement of the termination thereof by an intermeddler, while the parties thereto were ready and willing to continue performance, would render him liable for damages caused thereby."

As the law of this state on the effect of unenforceability is in accord with the position of *Restatement (Second) of Torts,* the position of the *Restatement* as to the similar effect of terminability at will is persuasive and is adopted.

Defendants' counsel argued that it would be unfair to hold that defendants may be liable for interference with a contract terminable at will because they read *People's Land & Mfg. Co. v. Beyer,* 161 Wis. 349, to have held that there can be no liability for interference with a contract terminable at will and because no prior Wisconsin decision has imposed such liability, except as to interference with employment contracts terminable at will.

Although we disagree with counsel's reading of *People's Land & Mfg. Co. v. Beyer,* no Wisconsin case appears to have held that interference with a contract terminable at will and not relating to employment may be tortious. *Restatement of Torts* sec. 766, comment c, at 53, 54, is not clear as to whether clause (a) of that sec-

tion, which was relied on in *Mendelson,* 9 Wis.2d 487, 491, applies to contracts terminable at will but does state that clause (b) applies to a business relationship terminable at will. Comment c states that a contract which is unenforceable because of the statute of frauds comes within clause (a). Section 766 has been revised and expressly made applicable to contracts terminable at will as well as to unenforceable contracts. *See, Restatement (Second) of Torts* sec. 766 at 10, 11.

The applicability of the tort of wrongful interference to all contracts terminable at will was foreshadowed by Justice Currie's reliance in *Mendelson,* 9 Wis.2d 487, 491, on the quotation from Prosser, *Law of Torts,* to the effect that "interference with employments or other contracts terminable at will is actionable." Our decision today does not overrule or repudiate earlier decisions. Although counsel states that the defendants may have governed their conduct on a different assumption, we doubt that reliance, if any, on another view of the law has been either widespread or justified in view of Justice Currie's opinion. No compelling reason to make the rule prospective only has been advanced and we decline to adopt that limitation on its application. See discussions in *Antoniewicz v. Reszczynski,* 70 Wis.2d 836, 236 N.W.2d 1 (1975); *State v. Michels Pipeline Construction, Inc.,* 63 Wis.2d 278, 303a, 217 N.W.2d 339, 219 N.W.2d 308 (1974); *Fitzgerald v. Meissner & Hicks, Inc.,* 38 Wis.2d 571, 157 N.W.2d 595 (1968), and cases cited as to when a court-made rule should not be retroactive.

The order overruling defendants' demurrer to the first claim is affirmed for the reasons stated.

D.  *Violation of Fiduciary Duty*

The trial court held that allegations in the first claim that Hemmings promised to "stay neutral" and that

the defendants participated in the refinancing plans support the inference that the agency relationship between CBR and the defendants had not been terminated and therefore that the activities of defendants could be a breach of a fiduciary relation. We disagree and do not affirm the order overruling the demurrer as to the first claim on grounds of breach of a fiduciary relation.

The complaint alleges that CBR engaged FPC "as sales agent in connection with the offering of registered investment contract securities . . . to Wisconsin investors." The complaint does not allege that the agency extended beyond those sales. Participation by defendants in the refinancing plans is consistent with an agency but it does not manifest "consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act," so as to result in that fiduciary relation. *Restatement (Second) of Agency* sec. 1(1) at 7 (1958). A promise to "stay neutral" would be unnecessary if defendants owed plaintiff a continuing duty of loyalty as agents. Inferences inconsistent with the existence of an agency can be drawn if defendants agreed, in the words of the complaint, to "allow" CBR to contact its own investors.

E. *Return of Commissions*

The trial court overruled the demurrer as to the claim for return of commissions for three reasons: first, the commissions were set in contemplation of completion of the contracts; second, defendants violated their fiduciary duty as agents; and third, the complaint states a claim based on unjust enrichment.

The second ground for overruling the demurrer cannot be sustained because of our ruling that no agency existed at the time of the acts complained of.

No cases are cited or arguments made in plaintiff's brief in support of the trial court's order or in opposition

to the position of the defendants regarding the unjust enrichment theory. Consequently, we reject this ground as a theory upon which to support the trial court's order overruling the demurrer. "Respondents on appeal cannot complain if propositions of appellants are taken as confessed which they do not undertake to refute." *State ex rel. Blank v. Gramling,* 219 Wis. 196, 199, 262 N.W. 614 (1935).

The complaint alleges, however, that commissions were allowed "in contemplation of the program continuing for its full 10 year normal term, and the sales price being paid in full . . ." We construe this allegation as raising an issue as to the terms of the agreement between plaintiff and defendant. If the allegation is true, and we must take it to be true for purposes of the demurrer, plaintiff would be entitled to a return of the commissions paid. Therefore, a cause of action is stated.

F. *Misrepresentation*

The trial court found the allegations of the complaint state a cause of action for fraudulent misrepresentation. Defendants attack the trial court's order overruling their demurrer to those allegations. The respondent again does not address the issues raised on appeal. We take this to mean that plaintiff has jettisoned this theory of recovery. *State ex rel. Blank v. Gramling,* 219 Wis. 196.

*By the Court.*—That part of the order overruling the demurrer as to the first claim is affirmed. That part of the order overruling the demurrer as to the second claim is affirmed. That part of the order overruling the demurrer as to the third cause of action is reversed. No costs to either party.