M&I Bank of Southern Wisconsin n/k/a M&I Marshall & Ilsley Bank, Plaintiff-Respondent,
v.
Robert F. Lins, Terri C. Lins and Lucille Kraemer, Defendants,
Edith Lins, Defendant-Appellant.
No. 03-2112.
Court of Appeals of Wisconsin.
Opinion Filed: February 26, 2004.
Before Deininger, P.J., Dykman and Lundsten, JJ.
¶1. PER CURIAM.
Edith Lins appeals from a judgment awarding M&I Bank of Southern Wisconsin (Bank) $30,000 plus attorney fees and costs. She contends that the trial court erred by granting the Bank summary judgment. She argues that a genuine issue of material fact exists about whether the Bank had a duty to disclose the antecedent indebtedness of the person whose loan she guaranteed. She also contends that the partial payment by her co-defendant should have reduced her liability and that the Bank breached its duty of good faith and fair dealing. We affirm.

BACKGROUND
¶2. Robert and Terri Lins obtained a loan from the Bank to purchase personal property from Robert's parents, Edith and Melvin Lins. The Bank required a limited guaranty from Edith and Melvin promising to pay all Robert and Terri's debts "arising out of credit previously granted, credit contemporaneously granted or credit granted in the future by" the Bank. On October 7, 1987, Edith and Melvin executed a Continuing Guaranty in the amount of $30,000. When Edith entered into these agreements, Robert and Terri had $32,270 in antecedent debt with the Bank.
¶3. Robert and Terri continued to obtain loans from the bank to finance their farm. In 1989, they were obligated to the bank in the amount of $98,792.23. The Bank considered the guaranty from Edith and Melvin collateral when extending subsequent loans. In 1993, Lucille and Vincent Kraemer executed a Continuing Guaranty in the amount of $25,116 to allow Robert and Terri to obtain another loan from the Bank.
¶4. After Robert and Terri defaulted, the Bank sued Edith Lins and Lucille Kraemer for the amount of their limited guaranties. (Melvin Lins and Vincent Kraemer had by then died.) Both Lucille and Edith offered to settle for $5,000. The Bank accepted Lucille's offer. It moved for summary judgment against Edith and prevailed. Edith appeals.

DISCUSSION
¶5. We review summary judgment decisions de novo, applying the same methodology as the trial court. Green Spring Farms v. Kersten, 136 Wis. 2d 304, 315-14, 401 N.W.2d 816 (1987). We will affirm a summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2) (2001-02).[1]
¶6. Edith claims that she did not know that Robert and Terri had $32,270 in antecedent debt with the Bank when she signed the limited guaranty. She asserts that the Bank had a duty to disclose to her this antecedent debt before she signed the agreement. She claims that she would never have guaranteed the loan if she had known of the antecedent debt. She argues that First National Bank & Trust Co. v. Notte, 97 Wis. 2d 207, 218, 293 N.W.2d 530 (1980), which adopted Restatement of Security, § 124(1) (1941), requires creditors to disclose facts known to the creditor, but unknown to the guarantor, "that materially increase the risk beyond that which the creditor has reason to believe the surety intends to assume." She claims the Bank's nondisclosure was therefore material and constitutes a breach of duty under Notte.
¶7. While we agree that the Notte test is applicable here, Edith has failed to establish that the Bank had a duty to disclose Robert and Terri's antecedent debt. Creditors must disclose only those matters they have reason to believe are unknown to guarantors. Robert was financing the operation of the family farm, which he was leasing from his parents. The Bank had no reason to believe Edith was not familiar with Robert and Terri's financial obligations given the close relationship between the parties and the purposes of the loan. Moreover, the evidence does not establish that Edith was involved in or aware of any negotiations about the limited guaranty. At her deposition, she testified that she never had any contact with the Bank; she did not know if her husband had discussed the agreement with the Bank; and she signed the agreement "[p]robably because my husband told me to." She admits that she never read the terms of the agreement. Under these circumstances, the Bank had no duty to disclose the antecedent debt to Edith.
¶8. Edith contends that a factual issue exists about whether she relied on the Bank's representations regarding the scope of her liability. She argues that her affidavit opposing summary judgment establishes a genuine issue of material fact about her reliance. The trial court, however, excluded her affidavit under the sham affidavit rule. The rule provides that "an affidavit that directly contradicts prior deposition testimony is generally insufficient to create a genuine issue of fact for trial unless the contradiction is adequately explained." Yahnke v. Carson, 2000 WI 74, ¶21, 236 Wis. 2d 257, 613 N.W.2d 102. Edith maintains that there is no contradiction between the deposition and the affidavit. We disagree. The affidavit asserts that Edith knew the representations the Bank made to her husband. It describes in detail what those representations were. Edith also seems to argue that her advanced age and the lapse of time between litigation and when she executed the agreement explain the contradiction. We are not persuaded and agree that her affidavit directly contradicted her deposition testimony without adequate explanation. We exclude her affidavit under the sham affidavit rule.
¶9. Edith also raises two other issues: (1) whether the Bank breached its duty of good faith and fair dealing; and (2) whether Kraemer's settlement partially satisfied the judgment against Edith because the co-defendants were joint and severally liable. The Bank contends that Edith waived all of these issues by not initially raising them. The trial court did not consider the payment defense in Edith's motion for reconsideration for this reason. But because Edith raised these issues in her motion for reconsideration, she has not waived them. See Schinner v. Schinner, 143 Wis. 2d 81, 93, 420 N.W.2d 381 (Ct. App. 1988).
¶10. The Bank responds to the merits of these two issues. First, it contends that it did not breach its duty of good faith and fair dealing because the agreement specifically disclosed the extent of Edith's liability, which was $30,000. It argues that there can be no breach of good faith and fair dealing when the agreement specifically authorizes the act complained about. It cites for support Super Valu Stores Inc. v. D-Mart Food Stores, Inc., 146 Wis. 2d 568, 431 N.W.2d 721 (Ct. App. 1988) and M&I Marshall & Ilsley Bank v. Schlueter, 2002 WI App 313, ¶15, 258 Wis. 2d 865, 655 N.W.2d 521, review denied, 2003 WI 16, 259 Wis. 2d 104, 657 N.W.2d 708 (Wis. Jan. 21, 2003) (No. 02-0884). We consider the Bank's argument persuasive. Edith did not file a reply brief and has offered no reason why Schlueter does not bar her payment defense. Issues to which no response is made are deemed confessed. State ex rel. Blank v. Gramling, 219 Wis. 196, 199, 262 N.W. 614 (1935).
¶11. Second, the Bank asserts that Edith "incorrectly introduces concepts of joint and several liability" and notes that she provides no citation to support her argument. It contends that the terms of the Limited Guaranty expressly preclude the payment defense. The agreement provides that the Bank "may from time to time ... without affecting the liability of [Edith] ... surrender, release or agree not to sue any guarantor or surety ...." The Bank argues that, because Robert and Terri's obligations exceeded $38,000, it could apply Kraemer's $5,284 judgment to the debt without reducing Edith's obligation of $30,000.
¶12. Edith seems to argue that her $30,000 liability should be reduced by $25,116 or an amount proportional to the discount Kramer received for her liability. She argues that "if Kraemer and Lins are jointly liable," then Wis. Stat. § 113.11 applies. She claims the trial court erred by not finding whether the co-defendants were jointly liable and contends that "the actual indebtedness of Edith Lins is a material issue of fact that must be determined by trial." This argument is undeveloped. Ordinarily, we refrain from considering such arguments. We decline to do so here. State v. Pettit, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992).
¶13. We conclude that the trial court correctly granted summary judgment to the Bank.
By the Court.Judgment affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.