777 N.W.2d 677 (2010)
2009 WI App 182
William S. PIPER, Debra M. Piper, Bearskin Trail, LLC, Gregory Tracy, Mary Jo Tracy, Gregory A. Meylor and Marisa K. Meylor, Plaintiffs,
v.
NITSCHKE'S NORTHERN RESORT CONDOMINIUM OWNER'S ASSOCIATION, LLC, Richard C. Nitschke, Brigit Nitschke, Peoples State Bank and Wells Fargo Bank, N.A., Defendants,
Ernest/Cherie, LLC and John Falls, Defendants-Appellants,
Chicago Title Insurance Company, Intervening Defendant-Respondent,
Secura Insurance, a mutual company, Intervening Defendant.
No. 2009AP550.
Court of Appeals of Wisconsin.
Opinion Filed November 3, 2009.
Submitted on Briefs September 29, 2010.
*678 On behalf of the defendants-appellants, the cause was submitted on the briefs of Frank W. Kowalkowski of Davis & Kuelthau, S.C., Green Bay.
On behalf of the intervening defendant-respondent, the cause was submitted on the brief of Douglas J. Klingberg of Ruder Ware, L.L.S.C., Wausau.
Before HOOVER, P.J., PETERSON and BRUNNER, JJ.
¶ 1 PETERSON, J.
Ernest/Cherie, LLC, and John Falls appeal a judgment declaring Chicago Title Insurance Company has no duty to defend them against a suit brought by members of a condominium association. Ernest/Cherie and Falls argue the court incorrectly concluded an exclusion to their title insurance policies precludes coverage for the claims. We agree and reverse.

BACKGROUND
¶ 2 In 2002, Ernest/Cherie, a real estate developer, filed a declaration with the Oneida County register of deeds to establish Nitschke's Northern Resort Condominium Association in Minocqua. A declaration is "the instrument by which a property becomes subject to [the condominium chapter of the statutes]." WIS. STAT. § 703.02(8).[1] Ernest/Cherie's declaration described Nitschke's Northern Resort as consisting of fifteen existing units as well as five units still to be constructed. Among the unconstructed units were units 19, now owned by Falls, and unit 20, owned by Ernest/Cherie.
¶ 3 In 2003, Ernest/Cherie recorded an amendment to the declaration with the register of deeds. This amendment created an additional unit  21in an area designated by the original declaration as a common element. A common element is an area owned jointly by all unit owners. In 2006, Ernest/Cherie recorded a second amendment. This amendment increased the size of the yet-to-be-constructed units 19 and 20 and added two additional parking spots. The area used for these expansions and modifications was, like the area used to create unit 21, designated as a common element in the original declaration.
¶ 4 In 2007, several members of the condominium association sued Ernest/Cherie, Falls, and the association, alleging the amendments were not properly adopted. They sought a declaratory judgment that the amendments were void and requested damages for misappropriation of the common element.
¶ 5 Ernest/Cherie and Falls tendered defense to Chicago Title, with whom they each had virtually identical policies.[2] Chicago Title intervened in this action and moved for summary judgment, claiming there was no coverage for the claims against Ernest/Cherie and Falls under the policies. It acknowledged the policies provided "an initial grant of coverage [for claims of defective title]." But it argued an exclusion in the policies removed coverage for claims, such as those here, arising out of the first and second amendments to *679 the condominium declaration. The exclusion provides:
This policy does not insure against loss or damage (and the Company will not pay costs, attorney's fees or expenses), which arise by reason of:
. . . .
Covenants, conditions, restrictions, reservations, limitations, uses, agreements, charges, assessments, easements and other provisions all as contained in Declaration of Condominium of Nitschke's Northern Resort Condominium; Bylaws, Rules and Regulations; Budget executed by Ernest/Cherie, LLC, a Wisconsin Limited Liability Company, dated April 12, 2002 and recorded April 25, 2002 as Document No. 551435 and First Amendment to Declaration executed by Ernest/Cherie, LLC dated April __, 2003 and recorded May 12, 2003 as Document No. 575049 and Second Amendment to Declaration executed by Ernest/Cherie, LLC dated January 12, 2006 as Document No. 627766 and corrected in Affidavit of Correction dated February 3, 2006 and recorded February 8, 2006 as Document No. 628797. (Emphasis added.)
Chicago Title contended this provision enumerates several different exclusions, each delineated by a semicolon. In other words, the first part of the exclusion applies to losses arising from "covenants, conditions, restrictions ... contained in" the declaration. It argued the rest of the exclusion encompasses losses arising in any manner from the bylaws, rules and regulations, the budget, and the amendments to the declaration.
¶ 6 The circuit court granted Chicago Title's motion, concluding that because there is a semicolon after "Declaration ... of Condominium," the preceding limitations, "covenants, restrictions, reservations..." only applied to the declaration, not to the bylaws, rules and regulations, the budget, or the amendments to the declaration. Accordingly, it held the policy "excludes [all] losses arising by reason of [the amendments]."

DISCUSSION
¶ 7 The issue on appeal is whether Ernest/Cherie's and Fall's insurance contracts with Chicago Title provide coverage for the claims against them. The interpretation of an insurance contract presents a question of law we decide independently. Folkman v. Quamme, 2003 WI 116, ¶ 12, 264 Wis.2d 617, 665 N.W.2d 857. We construe insurance contracts "to give effect to the intent of the parties, expressed in the language of the policy itself, which we interpret as a reasonable person in the position of the insured would understand it." Danbeck v. American Family Mut. Ins. Co., 2001 WI 91, ¶ 10, 245 Wis.2d 186, 629 N.W.2d 150.
¶ 8 Ernest/Cherie argues the circuit court's interpretation of the exclusion as excepting all claims arising from the first and second amendments is nonsensical because there is no reason the policy would provide coverage under the declaration but not its amendments. Ernest/Cherie asserts that the only logical way to interpret the exclusion is that it excludes coverage for certain types of losses from both the declaration and the amendments. That is, it contends the exclusion applies to losses arising from "covenants, restrictions, reservations... contained in": (a) the declaration, (b) the bylaws, rules and regulations, (c) the budget, and (d) the first and second amendments. We agree.
¶ 9 The circuit court relied on Drinkwater v. State, 69 Wis.2d 60, 73, 230 N.W.2d 126 (1975), when it concluded grammar dictated that the limiting language at the beginning of the exclusion could not apply to the documents after the first semicolon. *680 In Drinkwater, our supreme court analyzed a statute that used a semicolon to separate independent clauses in a compound sentence. The Drinkwater court observed that when a semicolon functions like this, it "separate[s] an independent clause that could stand as a sentence. It is coordinate to the material that appears before the semicolon and, as used in the instant case, modifies all that appears before the semicolon in the same manner that a separate sentence would explain the material in the preceding sentence." Id. (emphasis added).
¶ 10 The semicolons here do not separate independent clauses. An "independent clause makes a complete statement and can stand alone as a sentence. ..." Little, Brown, THE LITTLE, BROWN HANDBOOK § 5c, at 182 (Fowler Aaron 7th ed. 1998). "Bylaws, Rules and Regulations" is not a complete statement. Neither is "Budget ... dated April, 2002 ... and First Amendment ... and Second Amendment. ..." Nor are they coordinate clauses, which may also be separated by semicolons. See Bryan A. Garner, A DICTIONARY OF MODERN AMERICAN USAGE 542 (1998).
¶ 11 However, semicolons may also separate items in a series "when the items are long or internally punctuated ... [to] help the reader identify the items[,]" as in the following example: "The custody case involved Amy Dalton, the child; Ellen and Mark Dalton, the parents; and Ruth and Hal Blum, the grandparents." Little, Brown, supra § 22d, at 393. The opening words of the sentence  "The custody case involved"refer to all of the items separated by semicolons: the child, the parents, and the grandparents.
¶ 12 We conclude this is the manner in which the semicolons function here. The exclusion first excepts from coverage certain limitations on condominium ownership rightscovenants, conditions, restrictions, etc.and then lists the various documents in which these excluded limitations may appear: the declaration, the bylaws, the budget, and the amendments. This is the only sensible reading of Chicago Title's awkwardly worded exclusion.[3] While far from a model of good draftsmanship, the exclusion plainly uses semicolons to list the documents in which the excepted ownership limitations appear, including both the declaration and its amendments.
¶ 13 To interpret the exclusion otherwise, as Ernest/Cherie correctly argues, would render the policy illusory. Coverage is illusory when a premium is paid "for coverage which would not pay benefits under any reasonably expected set of circumstances." Link v. General Cas. Co., 185 Wis.2d 394, 400, 518 N.W.2d 261 (Ct.App. 1994). Here, Chicago Title purported to provide title insurance to units 19 and 21. But title to these units depends on the amendments because the amendments partially created unit 19 and completely created unit 21. Coverage for title insurance would not pay benefits under any reasonably expected set of circumstances when the policy fully excludes from coverage the documents on which title depends.
*681 ¶ 14 Chicago Title fails to explain how the policy is not illusory, dismissing Ernest/Cherie's argument as "contrived." Chicago Title simply posits without elaboration: "Assuming there was a claim unrelated to the First or Second Amendments, truly different circumstances, coverage could be triggered." But we are left to guess what might be the "truly different circumstances." Unit 21, for example, does not exist under the original declaration, owing its creation entirely to the first amendment. We fail to see, and Chicago Title does not explain, how any claim attacking unit 21's titlethe very situation the policy purports to insurecould be unrelated to the first amendment.
¶ 15 Chicago Title argues the exclusion is a standard condominium exclusion "to remove from coverage various matters which affect title which cannot be found in public record." J. Bushnell Nielsen, TITLE & ESCROW CLAIMS GUIDE, § 12.1 (2d ed. 2007). But Ernest/Cherie correctly points out that Chicago Title's own standard condominium documents exception contradicts this argument. Chicago Title's standard exception excludes:
Covenants, conditions, restrictions, reservations, easements, liens for assessments, options, powers of attorney, and limitations on Title, created by the laws of the state of the insured Land or set forth in the Master Deed or Declaration of Condominium, in the related By-Laws, in the Declaration of Trust, or Site Plans and Floor Plans as duly recorded in the appropriate land records office and as the same may have been lawfully amended, and in any instruments creating the estate or interest insured by this policy.
This "standard" condominium documents exception plainly excludes "covenants, conditions, restrictions ..." set forth in the "Declaration of Condominium ... and as the same may have been lawfully amended[.]" (Emphasis added.) It does not wholly exclude declaration amendments.
¶ 16 Nor is there any apparent reason it would. The statutes define a declaration as "the instrument by which a property becomes subject to [the condominium chapter of the statutes], and that declaration as amended from time to time." WIS. STAT. § 703.02(8). An amendment is "a condominium instrument that modifies a recorded condominium declaration." WIS. STAT. § 703.02(1h). In other words, the amendments are part and parcel of the declaration. This is reflected in the statutory requirement that declaration amendments be recorded in the same manner as the declaration.[4] WIS. STAT. § 703.07(2) ("A condominium instrument, and all amendments, addenda and certifications of a condominium instrument, shall be recorded in every county in which any portion of the condominium is located. ..."); WIS. STAT. § 703.07(3) ("All instruments affecting title to units shall be recorded. ..."); WIS. STAT. § 703.09(2) ("An amendment becomes effective when it is recorded in the same manner as the declaration."). Indeed, the record here indicates both the first and second amendments were duly recorded.
¶ 17 Finally, our conclusion is buttressed by another exclusion to the policy, which excludes losses or damages arising from "[r]ules and regulations contained in the Declaration of Condominium and any amendments thereto. ..." If coverage for all damages arising from the amendments were already excluded, a subsequent exclusion *682 for damages arising from rules and regulations in the amendments would be superfluous, a result we avoid when interpreting contracts. See Sonday v. Dave Kohel Agency, Inc., 2006 WI 92, ¶ 21, 293 Wis.2d 458, 718 N.W.2d 631 (we interpret contracts to give "reasonable meaning to each provision ... without rendering any portion superfluous").
¶ 18 Having determined the limiting language, "covenants, conditions, restrictions..." applies to the amendments as well as the declaration, the only remaining question is whether this language precludes coverage for the claims against Ernest/Cherie and Fall. Chicago Title's sole argument is that the claims here are precluded because the limitations apply only to the declaration. It does not refute Ernest/Cherie's argument that there is coverage if the limitations also apply to the amendments. It therefore concedes this issue. See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp., 90 Wis.2d 97, 109, 279 N.W.2d 493 (Ct.App.1979). Accordingly, we conclude the policy provides coverage for the members' claims.
Judgment reversed.
NOTES
[1] References to the Wisconsin Statutes are to the 2007-08 version.
[2] Ernest/Cherie's policy with Chicago Title was for unit 21. Unit 20, which is also owned by Ernest/Cherie was not insured by Chicago Title. Therefore, coverage for the claims related to unit 20 is not at issue in this appeal.
[3] Chicago Title characterizes Ernest/Cherie's argument that the restrictions apply to the First and Second Amendments as an "unreasonable, if not absurd, construction," and contends "[s]uch an interpretation ignores the plain meaning of words and common sense rules of grammar." Yet Chicago Title does not explain what rule of grammar compels its interpretation. Instead, it persists in the circuit court's mistaken reliance on Drinkwater's analysis of how semicolons function when they separate independent clauses, and concludes, without elaboration, that "[t]he trial court was correct." See Drinkwater v. State, 69 Wis.2d 60, 230 N.W.2d 126 (1975).
[4] The declaration here reflects this as well, defining "declaration" as "this instrument as it may be amended from time to time." Declaration of Condominium of Nitschke's Northern Resort Condominium, Paragraph III(I).