BRENNAN, P.J.
¶1 Casey M. Fisher appeals from an order denying without a hearing his February 2, 2017 postconviction motion for a new trial. Fisher was convicted of armed robbery and first-degree intentional homicide while armed. He had filed his first postconviction motion in 1996 following that conviction. At that time, Fisher's appointed postconviction counsel had advised him that there were no grounds for relief and that he had the following options for pursuing the case: (1) retain private counsel, (2) proceed with the appeal pro se after reviewing postconviction counsel's case file, and (3) authorize appointed counsel to file a no-merit report. Fisher opted to proceed pro se , reviewing postconviction counsel's case file and timely filing a motion for a new trial on the grounds of ineffective assistance of counsel. His claim related to two aspects of the trial: trial counsel's failure to present certain witnesses and trial counsel's failure to object to alleged misstatements in a police report.[1] This court affirmed the judgment and the order denying his 1996 postconviction motion.[2]
¶2 In 2017, Fisher filed the WIS. STAT. § 974.06 (2015-16)[3] postconviction motion that gives rise to this appeal. In this 2017 postconviction motion, Fisher, through counsel, argued that he is entitled to a new trial due to ineffective assistance of trial counsel. He bases this claim on trial counsel's failure to present exculpatory evidence implicating other suspects who had been investigated by police,[4] as identified in police reports that trial counsel had received in discovery. According to Fisher, he had no knowledge of these police reports prior to filing his 1996 motion. He asserts that he had knowledge only of what postconviction counsel described in a cover letter as "court records and transcripts"-and that he had no knowledge of the discovery materials that included police reports detailing interrogations of other suspects.
¶3 Because Fisher raised this issue for the first time in a successive postconviction motion, he must first overcome Escalona 's procedural bar to such motions. See WIS. STAT. § 974.06 and State v. Escalona-Naranjo , 185 Wis. 2d 168, 178, 517 N.W.2d 157 (1994) (defendants are required "to consolidate all their postconviction claims into one motion or appeal"). The exception to this rule is that a defendant may later raise an issue that "for sufficient reason was not asserted or was inadequately raised in his original, supplemental or amended postconviction motions." Escalona-Naranjo , 185 Wis. 2d 168 at 184. See also State v. Allen , 2010 WI 89, ¶91, 328 Wis. 2d 1, 786 N.W.2d 124 ("sufficient reason" can include "ignorance of the facts ... underlying the claim").
¶4 The postconviction court ruled that Fisher's motion was procedurally barred and did not reach any other issue in Fisher's motion. On appeal, the State argues only whether Fisher is procedurally barred.[5]
¶5 We address only the narrow threshold question of whether Fisher is procedurally barred, or whether he has alleged a sufficient reason under Strickland and Allen to overcome the bar. We conclude that based on this record, Fisher is not procedurally barred from pursuing his motion further and we remand for further proceedings on his postconviction motion. See State v. Bentley , 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996), and Allen , 328 Wis. 2d 1, ¶91 ("sufficient reason" can include "ignorance of the facts ... underlying the claim").[6]
BACKGROUND
¶6 This case arises from the October 26, 1993 murder of Yaser Mousa, who was found dead in his truck, with four gunshot wounds in the head, shortly after locking up his grocery store for the night. Two officers responding to the murder scene on the night of the crime were approached by a person who claimed to have witnessed the shooting. In a police report, an officer described what the eyewitness relayed about the shooting:
Upon our arrival, I P.O. [James] Williams was approached by an unknown black male[ ] who stated he don't want to get involved or give his name. He stated the subjects who shot the ... victim ran eastbound from 2137 N. 28th Street across N. 28th into the vacant lot at about 2140 N. 28th Street and northbound in the alley toward the dope house. He further stated he was told that a person known as "Little Rob" was involved. He stated if we go into the alley ... and look northbound toward Garfield you would be looking at the [drug] house with the lower door boarded up.
¶7 Police located three men in the "dope house": Robert Williams, Kevin Jones, and Tywan Beard. Williams is known as "Little Rob." Jones was wearing a gray tee shirt with a "possible blood stain on the right side shoulder area." After the three men's hands were swabbed for the presence of gunshot residue, the crime lab analysis showed that gunshot residue was present on Jones' hands and Williams' hands.
¶8 A.W., an acquaintance of Fisher, told police that Fisher had admitted shooting Mousa after robbing him of money and food stamps.
¶9 The State charged Fisher with one count of first-degree intentional homicide while armed and one count of armed robbery.
¶10 At trial, A.W. and J.W. testified that Fisher told them before the shooting that he planned to rob Mousa and that afterward he admitted to them that he shot and killed him. An officer testified that Fisher gave a statement that described his contact with Mousa on the night of the murder; Fisher told police that Mousa had given him a ride and dropped him off on 27th Street, and that that was the last time he had seen Mousa. Fisher told police that he had gone to A.W.'s home for a while and then went to his own home around 11 p.m.
¶11 Fisher elected not to testify. The defense and the State stipulated to read a statement concerning an unavailable defense witness to the jury. The statement concerned a photo array and lineup that had been conducted for a witness, A.B., who had told police that on the night of the shooting, a man had run past him immediately after the shooting and had pointed a gun at him. A.B. had been shown a photo array that included Fisher's photo. He told police he knew Fisher, and that he looked "something similar" to the man who had pointed the gun at him on the night of the shooting. When he was then sent to a lineup that included Fisher, A.B. told police he was unable to make an identification.
¶12 The jury convicted Fisher on both counts.
¶13 Appointed postconviction counsel advised Fisher by letter that there were no grounds for relief from the conviction and said he was enclosing the court records and transcripts. According to counsel, Fisher's options for pursuing relief were, retain private counsel, appeal pro se , or authorize counsel to file a no-merit report. As noted above, Fisher opted to pursue postconviction relief by filing a pro se postconviction motion in 1996. The postconviction court denied Fisher's postconviction motion without a hearing. This court affirmed.
¶14 Then, after the Wisconsin Innocence Project's representation of Fisher began, Fisher filed two postconviction motions at the same time in 2017. One was a motion under WIS. STAT. § 974.07 seeking postconviction DNA testing of several items; the other was the motion that is the subject of this appeal. In one order, the postconviction court decided both motions. The court granted the motion as to the request for DNA testing of the bloodstain on Jones' tee shirt; it denied the motion for testing of a plastic bag and four bullet casings. Fisher has not appealed the portion of the order denying bag and bullet casing testing, and the State has not appealed the portion of the order granting Fisher's motion.
¶15 The other motion, which is the subject of this appeal, is Fisher's WIS. STAT. § 974.06 postconviction motion, filed February 2, 2017, seeking a new trial. Its attachments included multiple police reports detailing the investigation and the evidence that pointed to the involvement of third parties in Mousa's murder. Fisher asserts that he did not learn of the police reports describing the existence of alternate suspects until he retained counsel from the Wisconsin Innocence Project.
¶16 Fisher's trial counsel is now deceased.[7] Fisher asserted in his 2017 postconviction motion that efforts to locate a second attorney who assisted Fisher's counsel at trial have been unsuccessful.
¶17 The State responded to Fisher's motion by arguing that Fisher's postconviction motion was procedurally barred under Escalona and Allen for lack of allegations of a sufficient reason for not raising the ineffective representation issue prior to his pro se 1996 postconviction motion. The trial court agreed and denied the motion on the procedural bar only, without a hearing. The court made no factual or legal findings on the sufficiency of Fisher's motion for an evidentiary hearing on his ineffectiveness claim.
DISCUSSION
¶18 Whether a WIS. STAT. § 974.06 motion alleges a sufficient reason for failing to bring available claims earlier is a question of law subject to de novo review. State v. Kletzien , 2011 WI App 22, ¶¶9, 16, 331 Wis. 2d 640, 794 N.W.2d 920. Similarly, whether a § 974.06 motion alleges sufficient facts to require a hearing is a question of law that this court reviews de novo. State v. Balliette , 2011 WI 79, ¶18, 336 Wis. 2d 358, 805 N.W.2d 334. If the motion does allege sufficient facts, the court "must hold an evidentiary hearing." State v. Allen , 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.
I. Fisher's motion alleges sufficient facts that if true would show a sufficient reason for not raising the ineffective representation issue raised here in his 1996 pro se postconviction motion.
¶19 Fisher alleges that he had no knowledge-at trial or when he filed his 1996 postconviction motion-of evidence that the police had an eyewitness and physical evidence pointing to alternative suspects. He alleges that "[o]nly after retaining the Wisconsin Innocence Project did [he] learn of the evidence of the third-party perpetrators," and he states that this fact will be developed at an evidentiary hearing.
¶20 The State responds that the facts in the record rebut Fisher's claim of lack of knowledge of the police reports, relying on postconviction counsel's letter and the postconviction court's fact finding about discovery. The State's reliance is misplaced. Postconviction counsel sent Fisher a letter with his file. But the letter made no reference to the discovery in general or the police reports in particular. The letter says, "I gave you the court records and transcripts which I had." The letter does not state that the police reports were contained therein. The postconviction court's April 26, 2017 order denying Fisher's motion states, "The reports attached as exhibits to the defendant's moving papers were part of discovery." It is not disputed that the reports were part of discovery; however, that is not dispositive of Fisher's assertion that he had no knowledge of them and that he "did not receive these pieces of discovery." Therefore, the record is devoid of any finding that contradicts Fisher's allegation of lack of knowledge.
II. Fisher did not waive his right to raise this issue by representing himself in his first pro se postconviction motion.
¶21 The State's alternative argument on the applicability of the procedural bar is that an ineffective assistance of counsel claim cannot be pursued by a defendant who has elected to represent himself. The State argues that Fisher was "the 'attorney' who failed to raise these two available claims" in his 1996 postconviction motion. In support of this argument, the State cites to language from Faretta v. California , 422 U.S. 806, 834 n.46 (1975) : "[W]hatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.' " See also United States v. Moya-Gomez , 860 F.2d 706, 741 (7th Cir. 1988) and United States ex rel. Smith v. Pavich , 568 F.2d 33, 40 (7th Cir. 1978).
¶22 Fisher's case is factually and legally distinguishable from these cases because he is claiming that trial counsel performed deficiently, and the Faretta language poses no barrier to that claim. The holdings of Faretta and similar cases would be relevant if Fisher were claiming that in acting as postconviction counsel for himself he performed deficiently, but he is not. Therefore, Fisher's successive postconviction motion is not barred by the principle stated in Faretta .
CONCLUSION
¶23 We therefore reverse the postconviction court's order that Fisher is procedurally barred from pursuing this postconviction motion. We do not reach the merits of his entitlement to a Machner hearing[8] and a new trial. We remand for further proceedings consistent with this opinion.
By the Court. -Order reversed and cause remanded for further proceedings.
Not recommended for publication in the official reports.

Fisher's appeal as of right also challenged the trial court's failure to grant a continuance; this issue was deemed waived because it had not been preserved below. State v. Fisher , No. 1996AP1081, unpublished slip op. at 3 (WI App Mar. 11, 1997).

Fisher , No. 1996AP1081, at 4.

Wisconsin Stat. § 974.06(1) provides as follows:
After the time for appeal or postconviction remedy provided in s. 974.02 has expired, a prisoner in custody under sentence of a court ... claiming the right to be released upon the ground that the sentence was imposed in violation of the U.S. constitution or the constitution or laws of this state ... may move the court which imposed the sentence to vacate, set aside or correct the sentence.
All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Fisher asserted that trial counsel failed to present evidence that had been made available as part of discovery concerning three suspects whom police interviewed. A police report said that according to an eyewitness, "the subjects who shot the ... victim ran eastbound ... and northbound ... toward the dope house." The report stated that the police went to the "dope house" and located three men there. They had the hands of the three suspects swabbed for gun residue that night, and crime lab tests showed that results were positive for two of the men. Police also had the crime lab test a stained tee shirt one was wearing and the tests showed that the stain was blood.

The State asks for an opportunity to submit a supplemental motion on the merits should we decide to address them, which as we explain we do not.

As to the "clearly stronger" requirement, the State has failed to preserve an argument concerning that requirement. See State v. Romero-Georgana , 2014 WI 83, ¶4, 360 Wis. 2d 522, 849 N.W.2d 668 (holding that defendant alleging ineffective assistance of postconviction counsel is required to demonstrate that the later claim is "clearly stronger" than the previously raised claims). The State has therefore forfeited that argument. See State ex rel. Blank v. Gramling , 219 Wis. 196, 199, 262 N.W. 614 (1935) ("Respondents on appeal cannot complain if propositions of appellants are taken as confessed which they do not undertake to refute."). See also Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp. , 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

State v. Lukasik , 115 Wis. 2d 134, 140, 340 N.W.2d 62 (Ct. App. 1983), holds that where "counsel in question cannot appear to explain or rebut the defendant's contentions because of death, insanity or unavailability for other reasons," the defendant must support an allegation of ineffective assistance of counsel with corroborating evidence. "Such evidence could be letters from the attorney to the client, transcripts of statements made by the attorney or any other tangible evidence which would show the attorney's ineffective representation." Id.

State v. Machner , 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979) (holding that it is a prerequisite to a claim of ineffective representation on appeal to preserve the testimony of trial counsel at a hearing to determine whether trial counsel's actions were the result of incompetence or deliberate trial strategies).