# COURT OF APPEALS
## DECISION
## DATED AND FILED

## January 7, 2020

**Sheila T. Reiff**
**Clerk of Court of Appeals**

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP1645**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017FA7255

**IN COURT OF APPEALS**
**DISTRICT I**

IN RE THE PATERNITY OF N.D.S.:

STATE OF WISCONSIN,

       PETITIONER-RESPONDENT,

  V.

VANIDY R. CROSS,

       RESPONDENT-RESPONDENT,

  V.

DERAY J. SHAFFALE,

       RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: PAUL R. VAN GRUNSVEN, Judge. *Reversed and cause remanded with directions.*

Before Brash, P.J., Kessler and Dugan, JJ.

¶1 DUGAN, J. Deray J. Shaffale appeals the trial court's order denying his motion to void a voluntary acknowledgment of paternity (VPA). Shaffale argues that the trial court's determination that the VPA is not void due to fraud or a mistake of fact is clearly erroneous. He further argues that the trial court erred, as a matter of law, when it determined that it was not in the child's best interest to void the VPA and that such finding was clearly erroneous.

¶2 We conclude that the record is insufficient to support the trial court's findings that Shaffale's signing of the VPA was not due to fraud or mistake of fact. We also conclude that the parties failed to adequately develop their arguments that the best interest of the child standard applies to WIS. STAT. § 767.805 (2017-18)[1]—voiding a VPA and is the proper standard to be applied by the trial court. Therefore, we reverse the trial court's order and remand this matter for an evidentiary hearing on the issues.

## BACKGROUND

¶3 On September 21, 2017, the State filed a summons and petition for child support for N.D.S. in the Milwaukee County Circuit Court naming Shaffale and Vanidy R. Cross, the child's mother, as respondents. The child was born on

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

January 23, 2017. The petition noted that Shaffale and Cross "signed an acknowledgement of paternity and filed it with the State Registrar … on March 24, 2017."[2]

¶4 Subsequently, the parties appeared *pro se* before a court commissioner. Shaffale informed the court commissioner that he had taken a private genetic test that excluded him as the father of the child. The court commissioner certified the matter to the trial court to reopen the VPA and took no further action.

¶5 On January 31, 2018, both parties appeared before the trial court. Shaffale filed a copy of the DNA report, which was dated July 17, 2017. The trial court stated that Shaffale's DNA test results indicated a 0% probability that Shaffale was the child's father. The State asked the trial court to appoint a guardian ad litem (GAL) to determine whether it would be in the best interest of the child to vacate the VPA.[3] The trial court agreed to appoint a GAL and continued the hearing so the GAL could investigate the matter.

¶6 The next proceeding before the trial court was on April 18, 2018. Shaffale and Cross appeared *pro se*. The GAL and the State also appeared. The GAL advised the trial court that he had interviewed Shaffale and Cross and that Shaffale represented that he had a DNA test that indicated that he was not N.D.S.'s father.

---

[2] The VPA is not part of the record.

[3] The State cited WIS. STAT. § 767.805(3)(b) as the basis for requesting the appointment of a GAL.

3

¶7      The trial court then asked Shaffale why he had signed the VPA. Shaffale responded that he just wanted to get insurance coverage for the child so he had to hurry up and sign the acknowledgment.

¶8      The GAL also told the trial court that Cross had given him the birthdate and a telephone number for a man living in Seattle, Washington, who could be N.D.S.'s father. He stated that Cross thought the man living in Seattle would cooperate with the DNA testing.

¶9      The GAL recommended that the trial court uphold the VPA based on the best interests of the child. However, he also suggested that the man in Seattle get a DNA paternity test. He also recommended that, if the man in Seattle underwent DNA testing and test results showed that the man was 99.99% likely to be the father, the trial court could let Shaffale "off the hook."

¶10     The State responded that paternity had been established with Shaffale as the father and that the VPA could only be voided upon a showing of fraud, duress, or a mistake of fact. The trial court then asked Shaffale additional questions regarding his signing of the VPA. Based on Shaffale's answers to those questions, the trial court made some findings regarding fraud, duress, and mistake of fact. We provide more details about the hearings as relevant in our discussion below.

¶11     The trial court next asked Cross what her "thoughts" were "on all this." Cross said that she really just wanted N.D.S. to get child support and be taken care of and that she was doing what she could do for the child, but she needed support.

4

¶12    The trial court then explained to Cross that, if it did not void the VPA, Shaffale would have certain responsibilities and rights with respect to N.D.S. Cross responded, "So since you brought that up, I would like to retest. If I could get the other guy possibly involved, I will try." The trial court did not place Cross under oath and it did not further question her.

¶13    The trial court asked the GAL for his thoughts or advice. The GAL suggested that, because the child was young and no relationship between the child and Shaffale had been established, it would be in the best interest of the child to find the biological father. The GAL also said that if the father was not found then the issue of the VPA could be revisited.

¶14    The trial court adjourned the matter to allow the GAL an opportunity to further investigate. The trial court also summarized the State's position as opposing the motion because Shaffale had not shown that he had any grounds to reopen the VPA. At the end of the proceeding, the trial court suggested that Shaffale and Cross each consider hiring a lawyer or obtaining legal advice because the "stakes are big."

¶15    At the next hearing on June 6, 2018, Shaffale and Cross both appeared *pro se*. The GAL reported to the trial court that the potential biological father was unwilling to cooperate with the necessary DNA testing to determine if he was the father of the child. Addressing the best interests of the child, both the State and the GAL asked that the trial court deny Shaffale's motion to void the VPA. Shaffale stated that he did not know that "this" was going to happen and that he had signed the VPA so that the child would have insurance.

¶16    The trial court denied Shaffale's motion to void the VPA based on its findings that Shaffale had not produced evidence of fraud, duress, or mistake of

fact and that Shaffale was the "best and only father" for N.D.S. The trial court then raised questions about custodial decision making, legal custody, and related matters that it had to resolve regarding N.D.S.[4]

¶17    This appeal follows.

## DISCUSSION

¶18    Shaffale argues that the trial court's decision not to void his VPA because of a mistake of fact or fraud is clearly erroneous. He argues that contract and fraud principles should be applied to determine whether there was a mistake of fact or fraud, since the statute does not include definitions for the terms. He further argues that the trial court erred, as a matter of law, when it determined that it was not in the child's best interest to void the VPA and that such finding was clearly erroneous.

¶19    The State argues that the trial court properly held that Shaffale failed to prove fraud, duress, or mistake of fact as required by WIS. STAT. § 767.805(5)(a). It further argues that the trial court properly concluded "that removing [Shaffale] from the child's birth certificate was not in the best interest of N.D.S. because it would leave the child fatherless."

### I.    Standard of review and applicable statutes

¶20    We will not set aside a trial court's factual finding unless it is clearly erroneous. *See* WIS. STAT. § 805.17(2). "Statutory interpretation is a question of law that we review *de novo*." *See Scace v. Schulte*, 2018 WI App 30, ¶4, 382

---

[4] Those issues are not a part of this appeal.

Wis. 2d 180, 913 N.W.2d 189 (citation omitted). If statutory language is plain, we apply that language without resorting to extrinsic sources. *See Shannon E.T. v. Alicia M.V.M.*, 2007 WI 29, ¶39, 299 Wis. 2d 601, 728 N.W.2d 636.

¶21 WISCONSIN STAT. § 767.805(1) provides that a statement acknowledging paternity that is filed with the state registrar becomes a "conclusive determination" of paternity after the expiration of a period during which the paternity acknowledgement can be rescinded.[5] It also provides that a determination of paternity based on an acknowledgement "shall be of the same effect as a judgment[] of paternity."

¶22 Under WIS. STAT. § 767.805(5)(a), "[a] determination of paternity that arises under this section may be voided at any time upon a motion or petition stating facts that show fraud, duress or a mistake of fact." The statute does not define the terms "fraud," "duress", or "a mistake of fact." If, during a proceeding under § 767.805(5)(a), the trial court determines that a male is not the father of the child, § 767.805(5)(b) states that "the court shall vacate any order entered under [§ 767.805(4)] with respect to the male."

## II. An evidentiary hearing regarding fraud and mistake of fact in Shaffale's signing of the VPA is necessary

¶23 Shaffale asserts that the facts do not support the trial court's conclusion that he had not established fraud or a mistake of fact regarding his signing of the VPA.

---

[5] Rescission of the VPA is not an issue in this case.

### *The proceedings before the trial court were inadequate to support the trial court's conclusions*

¶24     We conclude that the proceedings before the trial court were inadequate to support the trial court's conclusion that there was no showing of fraud or mistake of fact in the signing of the VPA.  First, the record reflects that Shaffale was never given notice that an evidentiary hearing at which he should be prepared to present evidence was going to take place at any of the three proceedings before the trial court.  In fact, the State described the situation as involving a "request, because there [was] no official motion."

¶25     Further, at the beginning of the second proceeding, the trial court began asking Shaffale why he signed the VPA.  However, it did not put him under oath at that time.  Shaffale responded that he just wanted to get insurance coverage for the child so he had to hurry up and sign the acknowledgment.  The trial court then summarized its view of the situation, stating that Shaffale signed the VPA acknowledging paternity; then the State "came after" Shaffale, informing him that it wanted him to pay child support for N.D.S.; and that Shaffale had a DNA test that says he is not N.D.S.'s father.  The trial court then said, "[N]ow you want me to order and declare that you are not the father of this child, right?"  Shaffale answered, "Yes."

¶26     As noted, the GAL then told the trial court that Cross had given him the birthdate and a telephone number for man living in Seattle who could be N.D.S.'s father.  With this additional information, the GAL made contradictory recommendations.  First, he recommended that the trial court uphold the VPA based on the best interests of the child.  However, the GAL also suggested that the man in Seattle get a DNA test.  He then recommended that, if the man in Seattle

8

underwent DNA testing and test results showed that the man was 99.99% likely to be the father, the trial court could let Shaffale "off the hook."

¶27    The State responded that it believed that paternity had been established with Shaffale as the father.  The trial court then asked if the State was asserting that Shaffale was time barred from trying to void the VPA and asked if the trial court had any authority under Wisconsin law to void the VPA.  The State responded that the VPA could only be voided upon a showing of fraud, duress, or a mistake of fact.

¶28    Then the trial court began to ask Shaffale additional questions.  It first asked him if he promised to tell the truth.[6]  It then proceeded to ask Shaffale questions regarding the issues of fraud and duress.  It asked Shaffale again why he signed the VPA.  Shaffale stated that he was in a hurry to get insurance coverage for the child and his employer required a signed birth certificate for the child, listing Shaffale as the father, to extend the insurance to the child.  Shaffale testified that he had not read the entire document before he signed it.  Shaffale also stated that when he signed the VPA, he knew that he had sexual relations with Cross and he thought he was the father of the child.

¶29    The trial court then asked Shaffale, "Did anyone make any representations to you that convinced you other than needing the insurance?  Did mom or anyone use any promises, threats, use any force to get you to sign this

---

[6] We note that the trial court's question to Shaffale does not meet the requirements for an oath under WIS. STAT. § 906.03.

9

[VPA]?" Shaffale said, "No." The trial court did not ask Shaffale any other questions regarding the circumstances surrounding his signing of the VPA.[7]

¶30 Moreover, the trial court did not ask Shaffale any questions that could have provided a factual basis for fraud or a mistake of fact regarding the VPA. For example, the trial court could have asked what, if anything, Shaffale knew about Cross's sexual relationships with other men, including the man in Seattle, when Cross and Shaffale had a sexual relationship. It could have asked what, if anything, Cross told him that caused him to believe that he was the child's father. There is no testimony or evidence in the record that establishes that Shaffale knew or had reason to believe that there were other potential fathers.

¶31 Cross was never called as a witness. The trial court only asked her what her thoughts were on the matter. Cross was never questioned regarding the circumstances under which she signed the VPA. The trial court did not question Cross about her knowledge of other potential fathers when she signed the acknowledgment of paternity. There is no testimony or evidence in the record regarding Cross's actions and representations to Shaffale.

¶32 The trial court also could have placed Cross under oath and asked her questions that could have provided a factual basis for fraud or a mistake of fact. For example, the trial court could have asked Cross about what discussions, if any, she had with Shaffale about him being the child's father or whether she had provided Shaffale with any information that might have led Shaffale to believe

---

[7] The record does not include the date(s) that Shaffale and Cross signed the VPA. There is also no indication who was the first to sign the form, and whether either Cross or Shaffale signed the form in the presence of the other.

that he was the father. The trial court could also have asked whether she provided Shaffale with any information about whether she was or was not having sexual relations with other men, specifically the man in Seattle, during the time frame that she was having sexual relations with Shaffale. Although the trial court was aware that fraud or a mistake of fact could void Shaffale's acknowledgment of paternity, questions that might have elicited relevant facts were not asked of Shaffale or Cross.

¶33 Further, because Cross was never called as a witness, Shaffale never had an opportunity to cross-examine her. He also was not given an opportunity to give his own direct testimony. While he answered questions from the trial court, Shaffale's testimony at the second proceeding before the trial court was brief. It consisted of three pages of transcript.

¶34 At the third proceeding, the GAL reported that the man in Seattle had not agreed to the necessary DNA test. The State then asked the trial court to deny the motion to void the acknowledgment, stating that it believed that at the prior hearing the trial court had found that there was no fraud, duress, or mistake of fact. The State said that it was "asking that [Shaffale's] motion or request, because there is no official motion, be denied." It asserted that it is better for the child to have a father on the birth records than no father at all. The GAL agreed with the State.

¶35 The trial court then stated that Shaffale had not met his burden of showing that the VPA was signed under fraud or duress or that there was a reason to vacate his signing of that document. The trial court stated that the State made a good point that if the court voided the VPA it would "leave this child potentially fatherless because the putative father in [Seattle] is not going to cooperate with a

11

blood test." It then concluded that "[w]hat we have here is because you signed that document, you're the best and only father for this kid, and I have to dismiss the motion[.]"

¶36    We conclude that the proceedings before the trial court were inadequate to support the trial court's conclusion that there was no showing of fraud or mistake in the signing of the VPA.[8]  Therefore, we remand this matter and instruct the trial court to conduct an evidentiary hearing on the issues surrounding Shaffale's arguments that the trial court should void the VPA because of fraud or a mistake of fact.[9]  Our remand of this matter is not intended to imply, and should not be construed as implying, any position regarding the ultimate decision.

### *We direct the parties' attention to the language of the statute addressing voiding a VPA*

¶37    We further note that the trial court, the State, and the GAL repeatedly reference the best interest of the child as the standard for determining whether a VPA may be voided.  However, none of them explain or cite any

---

[8] Additionally, Shaffale argues that by signing the VPA, Cross represented to Shaffale and the State that Shaffale was N.D.S.'s biological father and there were no other potential fathers anywhere else.  The State does not refute this argument.  We could consider that the State has conceded this argument.  *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979). (Failure to refute an argument constitutes a concession.).  However, in light of the state of the record as described above, including the fact that the VPA is not a part of the record, we believe it is appropriate to remand the matter for a full evidentiary hearing on the issue of whether there are grounds to void the VPA for fraud or mistake of fact.

[9] Shaffale does not present an argument regarding the trial court's finding that he did not sign the VPA under duress.  Therefore, Shaffale is deemed to have abandoned the argument.  *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).  Because we are remanding for further proceedings, we do not address Shaffale's argument that contract and fraud principles should be applied to determine whether there was a mistake of fact or fraud because the statute does not include definitions for the terms.  We note that the trial court's oral decision does not identify any standard for either term.

authority for the contention that the best interest of the child standard applies under WIS. STAT. § 767.805(5), which deals with voiding a VPA. The statute provides:

> If a court in a proceeding under par. (a) determines that the male is not the father of the child, the court shall vacate any order entered under sub. (4) with respect to the male. The court or the county child support agency … shall notify the state registrar … to remove the male's name as the father of the child from the child's birth record. No paternity action may thereafter be brought against the male with respect to the child.

*See* §767.805(5)(b). We note that the statute does not reference a best interest of the child standard.

¶38    During the second hearing, the trial court stated, "[D]espite what the genetic testing may show, the paternity determination is based upon what's in the child's best interest." It also stated:

> Let me explain this. I have had guys that I've known are not the father. I had genetic testing that establishes without a doubt that they're not the father, but I continue to have that person under Wisconsin law be the legal father of the child because it was in the child's best interest. That's what the law is.

It went on to say, "It's not what the test results say. In Wisconsin it's what's best for this child." At the conclusion of the third proceeding, the trial court stated that voiding the VPA could "leave [N.D.S.] potentially fatherless because the putative father in [Seattle] is not going to cooperate with a blood test." The trial court continued, "[Y]ou're the best and only father for this kid, and I have to" deny the motion. It then concluded that "[w]hat we have here is because you signed that document, you're the best and only father for this kid, and I have to dismiss the motion."

13

¶39    Shaffale also asserts that the trial court's finding that it was not in the child's best interest to void the VPA was clearly erroneous and contrary to law.  He argues that WIS. STAT. § 767.41(5)(am) describes the factors that the trial court must consider in a best interest of the child analysis.  He then asserts that the trial court failed to consider all the relevant factors and only considered the financial factor.  He points out that Cross was only interested in the financial support.  The State responds that the best interest factors set forth in WIS. STAT. § 767.41(5)(am) only apply when making custody and placement determinations and that they are not relevant to determinations involving voiding a VPA.

¶40    The trial court, the State, and Shaffale do not cite any authority for the contentions each makes.  The trial court, the State, and Shaffale do not cite any authority for the contention that the best interest of the child standard, which is not contained in the language of the statute, applies to voiding a VPA, nor do they develop the argument.  In short, they have done no more than to state the proposition without any elaboration.  They have not developed or presented an argument telling us why we should accept their conclusory proposition, and they have not referred us to any legal authority supporting the statement.  We need not address undeveloped arguments.  *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶41    On remand, the parties and the trial court should review WIS. STAT. § 767.805(5)(a) and (b) and the court should make findings pursuant to the language of the statute.  Further, they should cite legal authority for applying the best interest when voiding a VPA is at issue, particularly because the statute does not state that the best interest of the child standard applies to a petition to void a VPA.

## CONCLUSION

¶42     For the reasons stated, we reverse and remand with directions.

*By the Court.*—Order reversed and cause remanded with directions.

Not recommended for publication in the official reports.