# COURT OF APPEALS
# DECISION
# DATED AND FILED

## July 13, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP86**

**STATE OF WISCONSIN**

Cir. Ct. No.  2018ME423

**IN COURT OF APPEALS
DISTRICT III**

IN THE MATTER OF THE MENTAL COMMITMENT OF M. D. H.:

OUTAGAMIE COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,

   PETITIONER-RESPONDENT,

 V.

M. D. H.,

   RESPONDENT-APPELLANT.

           APPEAL from orders of the circuit court for Outagamie County: VINCENT R. BISKUPIC, Judge. *Affirmed.*

¶1 HRUZ, J.[1] Matthew[2] appeals from an order of commitment and an order for involuntary medication and treatment entered pursuant to WIS. STAT. § 51.20. Matthew challenges the sufficiency of the evidence establishing that he was dangerous to himself or others under § 51.20(1)(a)2. We affirm.

## BACKGROUND

¶2 In December 2018, Matthew went to Ascension St. Elizabeth's Hospital accompanied by his brother, showing signs of significant confusion and disorientation. Matthew was unable to answer basic questions or provide a background history to hospital staff. When he demanded to leave and refused to cooperate with treatment, he was detained on an emergency basis pursuant to WIS. STAT. § 51.15 and transferred to the behavioral health section of the hospital. At a subsequent probable cause hearing, the circuit court found probable cause to believe that Matthew was mentally ill, a proper subject for treatment, and dangerous to himself or others. The court also entered an order for involuntary medication and treatment for the period up to the final hearing, pursuant to WIS. STAT. § 51.61(1)(g)2.

¶3 A final commitment hearing was held on December 20, 2018. Psychiatrist Marshall Bales testified that he believed to a reasonable degree of professional and medical certainty that Matthew suffered from a major mental illness or disorder—i.e., a "psychotic disorder not otherwise specified"—and was

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than his initials.

a proper subject for treatment. Bales testified that in interviewing Matthew, he observed that Matthew was unable to "rationally have a coherent discussion," and that he appeared "confused and suspicious." Bales recounted conversations with Matthew's family, stating that their concerns made it apparent that Matthew had been erratic "for some time." Bales further testified that certain incidents evidenced Matthew's erratic and dangerous behavior. In particular, Matthew had gone to his former workplace and falsely announced himself as the company's chief executive officer. Bales also noted that Matthew had recently driven off from a gas station without paying for gas, and when he returned to the station, his interactions with police ultimately led to him being charged with resisting arrest. Moreover, Matthew later could not understand that the incident had occurred or why he had been arrested. These incidents all occurred while Matthew was "in a psychotic state, which had been developing over several weeks or months."

¶4 Bales further commented that Matthew's condition was "very treatable," but that due to his psychotic state of mind, Matthew required inpatient care. According to Bales, if Matthew did not receive treatment, the very erratic nature of his behavior would be a serious concern, in that Matthew might physically impair himself. As Bales further explained, "anything could happen" as a result of Matthew's erratic mental state. "[He] could walk outside in cold weather. He could get in a car accident. He's already been noted to be just not functioning in a way that is compatible with safe, independent living." Finally, Bales noted that Matthew was unable to rationally talk to him about pursuing help voluntarily, nor was he competent to agree to voluntary help, or to make an informed choice about taking medication due to his illness.

¶5 Thomas Jankowski, the admitting registered nurse in Ascension's behavioral health unit, also testified at the hearing. He recounted that after

3

Matthew was admitted, his behavior "started to escalate," and he started following one of the patients around and began "getting into his face." After being told he could not leave, Matthew began prying the door handle, banging on windows, swearing, and pointing and yelling at the people around him. Jankowski testified that Matthew had been shaking and "swinging" his fists, and eventually he had to be placed in a safe room.

¶6      Matthew also testified at the final commitment hearing. Following his testimony, the circuit court concluded, based on the testimony at the hearing and the contents of Bales' report (which we discuss in greater detail below), that Matthew was unable to care for his basic needs and was a danger to himself. It also concluded that he suffered from a mental illness and was a proper subject for treatment. The court entered an order for involuntary commitment accompanied by an order for involuntary medication and treatment, both to remain in effect for a period of six months. Matthew appeals.[3]

## DISCUSSION

¶7      In a WIS. STAT. ch. 51 proceeding, a petitioner has the burden to prove by clear and convincing evidence that a subject individual is mentally ill, a proper subject for treatment, and dangerous to himself or herself, or to others. *See* WIS. STAT. § 51.20(1)(a), (13)(e). Whether this burden has been met presents a

---

[3] Matthew argues that even though his commitment order expired in 2019 and the County did not seek recommitment, his appeal is not moot. We agree that the appeal is not moot because the commitment order continues to prohibit Matthew from owning a firearm, and he is therefore subject to a lasting collateral consequence of the order. *See Marathon Cnty. v. D.K.*, 2020 WI 8, ¶25, 390 Wis. 2d 50, 937 N.W.2d 901. Additionally, the County did not rebut the mootness argument in its brief and instead addressed the merits of Matthew's appeal. Arguments not refuted are deemed admitted. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 108-09, 279 N.W.2d 493 (Ct. App. 1979).

mixed question of fact and law. *Waukesha Cnty. v. J.W.J.*, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783. We uphold the circuit court's findings of fact unless they are clearly erroneous. *Id.* Whether these findings satisfy the statutory standards is a question of law we review de novo.[4] *Id.*

¶8 A petitioner may prove that a person is dangerous and warrants commitment under any of the five standards set forth in WIS. STAT. § 51.20(1)(a)2.a.-e. *See Langlade Cnty. v. D.J.W.*, 2020 WI 41, ¶30, 391 Wis. 2d 231, 942 N.W.2d 277. Matthew contends the County failed to establish dangerousness under WIS. STAT. § 51.20(1)(a)2.d., which provides that an individual is dangerous if he or she:

> Evidences behavior manifested by recent acts or omissions that, due to mental illness, he or she is unable to satisfy basic needs for nourishment, medical care, shelter, or safety without prompt and adequate treatment so that a substantial probability exists that death, serious physical injury, serious physical debilitation, or serious physical disease will imminently ensue unless the individual receives prompt and adequate treatment for this mental illness.

Bales' report, the circuit court's assessment of Matthew's behavior at the commitment hearing, and the remainder of the record provide clear and

---

[4] The final circuit court decision in this case was issued in December 2018. Our supreme court has since implemented a requirement in *Langlade County v. D.J.W.*, 2020 WI 41, ¶3, 391 Wis. 2d 231, 942 N.W.2d 277, that "going forward circuit courts in recommitment proceedings are to make specific factual findings with reference to the subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. on which the recommitment is based." While *D.J.W.* addressed a recommitment petition and not, as here, an initial commitment, we assume the court's ruling regarding the specific reference to a statutory dangerousness standard equally applies to initial commitments. *See Winnebago Cnty. v. A.A.L.*, No. 2020AP1511, unpublished slip op. ¶17 n.8 (WI App Mar. 24, 2021).

Because the circuit court was not yet subject to this requirement when it made its factual findings, we will search the record and the court's decision for specific facts that apply to the dangerousness determination at issue.

convincing evidence that Matthew was unable to care for his own basic needs due to his mental illness, and that a substantial probability existed that death or serious physical injury would occur to him absent treatment.[5]

¶9    Bales' report, which the circuit court considered and which was entered into evidence at the commitment hearing, made it clear that Matthew had experienced numerous emergency assessments by the County in the months leading up to his commitment, and that his psychosis had progressively worsened to the point where he was unable to care for his basic needs. Matthew's siblings, one of whom had accompanied Matthew to the hospital, indicated that Matthew had been unable to pay his bills, care for his own property, or maintain his personal hygiene, that he would laugh hysterically, and that they were generally concerned for his safety and welfare. The substantial risk to Matthew was highlighted by recent public incidents that Bales concluded had occurred as a result of his psychosis—both at Matthew's workplace and at a gas station—the latter of which led to Matthew being charged with resisting arrest. Matthew's family also explained to Bales that Matthew had told them his television was looking at and talking to him, and that Matthew thought he had been nominated by President Trump to be the next supreme court justice.

¶10    Bales' testimony at the hearing regarding his assessment of Matthew, as discussed above, further evidences Matthew's inability to care for

---

[5] Matthew notes that the County's brief cites both the transcript of the probable cause hearing and the report of the examining psychologist, L. William Topel, but that neither citation is proper because those documents were not admitted into evidence at the final hearing. The facts relevant to the dangerousness determination in this appeal as well as to the substance of the County's arguments were not located in these separate documents, and so these citations have no effect on the outcome of the case on appeal.

himself and the resulting danger therefrom. Matthew was unable to understand his medication options, nor was he "competent to agree to any kind of voluntary help," and he had trouble thinking clearly or rationally due to his psychosis. The circuit court, too, noted that Matthew's behavior on the witness stand was consistent with Bales' report, stating: "[H]is demeanor and presentation is, at times, confusing. Speech is disorganized in some ways. Doesn't seem completely clear in his thoughts. And he may parrot some things that are presented to him."

¶11    Matthew argues that in **D.J.W.**, factors like being unable to maintain a job or relying on family support did not indicate an inability to take care of one's self, or otherwise support a dangerousness determination. Because Matthew does not need to rely on family members for support or income, and because he had kept a job in the past, he argues that there was insufficient evidence to show that he could not take care of himself,[6] and that there is not a substantial probability that death or physical injury could imminently ensue from his inability to satisfy his basic needs. One's inability to keep a job, or his or her reliance on family members, does not alone indicate an inability to satisfy one's basic needs such that a "substantial probability" of death or serious injury exists. **D.J.W.**, 391 Wis. 2d 231, ¶¶53-55. However, there are significant facts surrounding Matthew's illness that show erratic and potentially dangerous behavior beyond simply needing to be cared for by his family.

---

[6] Both parties dedicated significant portions of their briefs to discussing whether Matthew allegedly drank spoiled milk, and what effect that act might have had on whether he could care for himself. But, the circuit court explicitly disregarded this issue in its decision because the specific facts were contested, and the record supported a dangerousness finding without considering the alleged milk incident.

¶12 This case is distinct from *D.J.W.*, where the only danger to withdrawing treatment was that D.J.W. would need the support of his family given his inability to maintain a job due to his schizophrenia. *Id.*, ¶¶51-55. Here, Matthew's family went with him to the hospital to seek help, and they raised numerous and significant concerns to Bales about Matthew's deteriorating behavior and his inability to live alone or take care of himself. Matthew's behavior and progressing psychosis evidence a far more serious danger than was established in *D.J.W.*, and his family's reactions and fears show that their support alone would not suffice to handle Matthew's illness.

¶13 Additionally, in *D.J.W.*, the opining doctor testified only to generalized propositions about people with schizophrenia, which the circuit court concluded was not sufficient to presume future danger to D.J.W. *Id.*, ¶51. Matthew argues the same limitation happened in his case. To the contrary, Bales' conclusions were grounded in evidence from a number of specific incidents, his personal observations of Matthew, and detailed reports of recent behavior from Matthew's family. Based on these considerations, Bales specifically noted that although he could not predict what would happen, Matthew's erratic behavior could cause Matthew to "walk outside in cold weather … [or] … get in a car accident" as he was not "functioning in a way that is compatible with safe, independent living."

¶14 Matthew's argument essentially contends Bales could not validly conclude that Matthew's inability to care for himself—including his need for multiple emergency contacts and assessments, and his resisting arrest—was caused by his worsening psychosis. We disagree with this notion, and the record was sufficient to presume future danger to Matthew due to his mental state. The circuit court is the arbiter of credibility in assessing expert testimony, and

Matthew does not allege that its assessment was flawed such that we would deem it to be clearly erroneous. *See **State v. Curiel***, 227 Wis. 2d 389, 421, 597 N.W.2d 697 (1999).

¶15 Based on the evidence introduced at the final commitment hearing, the circuit court properly determined that Matthew was dangerous under WIS. STAT. § 51.20(1)(a)2.d. Although the parties raise arguments relating to § 51.20(1)(a)2.c., we need not address them because we conclude the County has met its burden to prove dangerousness under § 51.20(1)(a)2.d. We therefore affirm the involuntary commitment order and the order for involuntary medication and treatment.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.