COURT OF APPEALS
DECISION
DATED AND FILED

November 30, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2021AP1214-CR**
**2021AP1215-CR**
**2021AP1216-CR**

Cir. Ct. Nos. **2016CF1838**
**2018CF163**
**2018CF1246**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT II**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

KRISTOPHER D. MITCHELL,

   DEFENDANT-APPELLANT.

APPEALS from judgments of the circuit court for Racine County: MARK F. NIELSEN, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).

¶1    PER CURIAM.  Kristopher D. Mitchell appeals from judgments of conviction entered upon his no contest pleas to drug offenses and bail jumping in three separate criminal cases.[1]  He argues the circuit court erroneously denied his motion to suppress evidence.[2]  First, he argues his traffic stop was unlawfully prolonged so that the police could perform a dog sniff for narcotics.  Second, Mitchell argues that after he was arrested and transported to a hospital, his Fourth Amendment rights were violated by a physician's search of his buttocks with the assistance of police.

¶2    We conclude the traffic stop in this case was not unconstitutionally prolonged to accomplish the dog sniff.  We further conclude that the search of Mitchell's person, which involved a physician merely rolling him on his side with police help and extracting a baggie of cocaine that was extruding from his buttocks, was not an unconstitutional search, even if it was a "joint endeavor" between police and medical staff.  We therefore affirm.

## BACKGROUND

¶3    Racine police had received information from various individuals that Mitchell was dealing cocaine on a specific street in Racine.[3]  Police were told

---

[1] By order dated November 9, 2021, these appeals were consolidated for purposes of briefing and disposition.

[2] WISCONSIN STAT. § 971.31(10) (2019-20) permits appellate review of an order denying a motion to suppress evidence, notwithstanding the fact that judgment was entered based on the defendant's no contest plea.

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[3] The circuit court regarded these individuals as anonymous informants.

Mitchell kept the cocaine in either the glove compartment of his white Cadillac or on his person, down his pants near his rectum. This information was conveyed over the course of several months to Police Officer Michael Seeger, who on December 20, 2016, initiated a traffic stop of Mitchell.

¶4 Seeger testified he was performing surveillance on Mitchell's vehicle and watched Mitchell, who was driving, perform an unsafe left turn in front of another vehicle. Mitchell then rolled through a controlled intersection without stopping. After Seeger activated his car's emergency lights and siren, he saw Mitchell make movements that appeared as though Mitchell was trying to conceal something down the right side of his pants. During the stop, Seeger had another officer perform a K-9 sniff around the vehicle.

¶5 The dog alerted to the presence of narcotics near the driver's side of the vehicle.[4] Police found a digital scale with suspected marijuana residue and plastic baggies inside the Cadillac, but no narcotics. However, during two searches of Mitchell's person,[5] Seeger noted that Mitchell was tightly clenching his buttocks. Seeger placed Mitchell under arrest for possession of drug paraphernalia. Under the circumstances, Seeger decided to take Mitchell to the Racine County Jail to request a strip search based on his belief that Mitchell was concealing narcotics down his pants.[6]

---

[4] As set forth later in this opinion, Mitchell was outside of the vehicle at the time of the dog sniff.

[5] The first search of Mitchell's person was done by consent. The second search was conducted after Seeger had decided that Mitchell would be taken to the Racine County Jail.

[6] The circuit court concluded that, had Mitchell actually been strip searched at the jail, it would have violated state law. We have no need to reach this issue under the facts presented.

3

¶6      Once Mitchell arrived at the jail, he claimed he had numerous medical issues, including chest pains and heart palpitations. Mitchell refused to cooperate with trained medical staff, and Seeger testified that the jail will not accept someone alleging a medical condition if they cannot be evaluated. Because Mitchell would not allow staff to take his vitals or perform an assessment, he was taken by ambulance to a hospital. He became agitated during the ride, ripping off medical devices and trying to yank off the handcuffs attached to the cot rails.

¶7      Once at the hospital, Seeger informed a doctor that he suspected Mitchell had narcotics in his buttocks. Mitchell complained of chest pains, and his breathing was labored. Nonetheless, he continued his combative behavior, including grabbing nurses even while handcuffed. The doctor requested police assistance in rolling Mitchell on his side, so he could visually observe Mitchell's buttocks. Once turned, the doctor observed a plastic baggie sticking out from Mitchell's buttocks and retrieved it. The baggie was later determined to contain cocaine.

¶8      Mitchell sought to suppress all evidence derived following the traffic stop, asserting the stop was unlawfully extended. He also argued that the cocaine found on his person should be suppressed as the fruit of an illegal body-cavity search. Following several hearings, the circuit court denied the motion. Mitchell now appeals.

## DISCUSSION

¶9      We employ a two-step process when reviewing a circuit court's denial of a motion to suppress. *State v. Harris*, 2017 WI 31, ¶9, 374 Wis. 2d 271, 892 N.W.2d 663. We will uphold the court's factual findings unless they are clearly erroneous. *Id.* However, we apply constitutional principles to those facts

4

de novo, without deference to the circuit court, but benefitting from its analysis. *Id.*

¶10    Mitchell first argues that the traffic stop was unlawfully prolonged to allow the police to perform a dog sniff.  A dog sniff conducted during a lawful traffic stop is constitutionally permissible as long as the stop is not prolonged beyond the time reasonably required to complete the mission of the stop, which includes addressing the traffic violation that warranted the stop and any ordinary inquiries incident to the stop.  *Rodriguez v. United States*, 575 U.S. 348, 350-51, 354-55 (2015).  Mitchell argues that in this case, Seeger should have simply issued a citation for the driving infractions; Mitchell asserts that Seeger should not have ordered Mitchell out of the vehicle and asked for consent to search his person.

¶11    The hearing testimony demonstrates that Seeger was still completing tasks related to the mission of the stop and attendant safety concerns at the time the dog sniff was conducted.  Officer Donald Rybark testified that he heard Seeger radio in that he was initiating a traffic stop on the Cadillac.  Rybark was only three to four blocks away with his K-9 unit and proceeded to the scene immediately.  He arrived at the same time Seeger requested a K-9 unit to conduct a dog sniff.  Rybark testified he arrived approximately one minute after Seeger had initiated the traffic stop.

¶12    When Rybark arrived, Seeger was speaking with Mitchell, who was sitting in the Cadillac's driver's seat.  Seeger testified he asked Mitchell for his driver's license and insurance information, which Mitchell provided.  Rybark testified he stood back providing cover while Seeger asked Mitchell to exit the vehicle, which Seeger testified he did because he was concerned about officer safety given Mitchell's furtive movements.

¶13     During the pat-down search, Seeger discovered a suspicious object, at which time he asked for Mitchell's consent to search his person.   Seeger retrieved a small black device that he believed to be a digital scale from Mitchell's pocket and placed Mitchell in handcuffs.[7]   Seeger then completed the search of Mitchell's person, during which he found a baggie of firearm ammunition.   Seeger questioned Mitchell about these items; Mitchell claimed he had just found the items lying on the ground, but Seeger was skeptical of that explanation.

¶14     While the consent search and conversation between Seeger and Mitchell was occurring, Rybark was performing the K-9 search.   After the K-9 had indicated the presence of the narcotics, Rybark joined Seeger and Mitchell near the front of Seeger's police vehicle and asked Mitchell why the dog would have alerted to the presence of narcotics.

¶15     The evidence received at the suppression hearing establishes that the traffic stop in this case was not unconstitutionally prolonged to accomplish the dog sniff.   Contrary to Mitchell's argument, the officers were not required to simply issue him a citation and allow him on his way.   Under the circumstances, the officers were justified in requesting that Mitchell step out of his vehicle for a pat-down search, during which Mitchell consented to a further search of his person after Seeger discovered a suspicious object.   The law allows an officer to "take certain negligibly burdensome precautions in order to complete his mission safely." *Rodriguez*, 575 U.S. at 356.   And, "[u]nder *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977), an officer may ask a driver to step out of the car during a traffic stop because '[e]stablishing a face-to-face confrontation diminishes the

---

[7] The device, Seeger later discovered, was a garage door opener.

6

possibility, otherwise substantial, that the driver can make unobserved movements' which could threaten the officer's safety." ***State v. Smith***, 2018 WI 2, ¶31, 379 Wis. 2d 86, 905 N.W.2d 353. Because the dog sniff occurred during these lawful activities undertaken as part of the traffic stop, the length of the stop was not of an impermissible duration.

¶16 Mitchell next argues that the baggie of cocaine retrieved from his buttocks should be suppressed because he was subjected to an unconstitutional search at the hospital. He argues the search was a "joint endeavor" between private and government actors because the search was preceded by the police informing the physician that Mitchell may have hidden narcotics in his rectal area and because police helped the physician roll Mitchell on his side during the visual examination. He therefore argues the search was a warrantless and unreasonable government search under the Fourth Amendment. *See **State v. Payano-Roman***, 2006 WI 47, ¶30, 290 Wis. 2d 380, 714 N.W.2d 548.

¶17 The State concedes, for purposes of argument, that the search constituted a government search under ***Payano-Roman***. The State argues, however, that the two exceptions to the warrant requirement discussed in ***Payano-Roman***—search incident to arrest and exigent circumstances—are present here. *See **id.***, ¶¶31-33. As in ***Payano-Roman***, we conclude that it is not necessary to determine whether exigent circumstances were present as a search of Mitchell's

7

person was justified as a search incident to arrest.[8]  Because at least one exception to the warrant requirement is present, we proceed to consider whether the search was reasonable under the Fourth Amendment.  *See id.*, ¶34.

¶18    Reasonableness under these circumstances is determined by applying the three-factor balancing test articulated in ***Winston v. Lee***, 470 U.S. 753 (1985).  *See **Payano-Roman***, 290 Wis. 2d 380, ¶¶36-42.  "Under that test, courts examine":  "(1) the extent to which the procedure may threaten the safety or health of the individual";  "(2) the extent of the intrusion upon the individual's dignitary interests in personal privacy and bodily integrity";  and  "(3) the community's interest in fairly and accurately determining guilt or innocence."  ***Id.***, ¶37.

¶19    Here, the first two factors are strongly outweighed by the third.  The "procedure" here involved merely turning Mitchell on his side to perform a visual inspection of the buttocks area where Mitchell was suspected of hiding narcotics.  The search was not intrusive and did not involve a digital search of his body cavities.  Moreover, the search was justified not only by the community's interest in determining whether Mitchell had committed crimes, but also by the need to address the medical distress that Mitchell appeared to be in.  Hospital records

---

[8] Mitchell's Reply brief does not materially attempt to rebut the State's assertion that two exceptions to the warrant requirement were applicable here.  He simply argues there is "no evidence in the record why police could not have obtained a search warrant even though Mr. Mitchell was stopped at approximately 5 p.m. and the medical procedure did not occur until approximately 7:20 p.m."  This argument merely begs the question of whether a warrant was required in the first instance.  Nor does Mitchell's brief-in-chief preemptively address the applicability of the State's proffered exceptions to the warrant requirement.  Under the circumstances, we disagree with Mitchell's assertion that the State's argument is conclusory, and we deem him to have conceded the applicability of the State's proffered exceptions.  *See* ***Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

showed that Mitchell was evaluated upon arrival for a possible drug overdose. He presented to the emergency department with "gasping breathing" and "rubbing [his] chest and stating his chest hurts."

¶20 Mitchell argues that the State failed to present any medically qualified witness to substantiate the need for the procedure, and the search was a highly intrusive digital search designed to "circumvent" the strip search requirements under WIS. STAT. § 968.255. *Payano-Roman* recognizes that although medical testimony may be necessary in many cases, not every case will require it. *Payano-Roman*, 290 Wis. 2d 380, ¶48. Such expert testimony was unnecessary here given the nature of the search and the precipitating conditions. Moreover, we disagree with Mitchell's characterization of the search as an end run around § 968.255. Even in instances where the statute is violated, there is no basis for a suppression motion unless the defendant has been subjected to an unconstitutional search. *See State v. Minett*, 2014 WI App 40, ¶10, 353 Wis. 2d 484, 846 N.W.2d 831.

¶21 Under the circumstances here, we accept the State's concession that the search was a joint endeavor, and we conclude that the search was valid pursuant to an exception to the warrant requirement. The search was also reasonable within the dictates of the Fourth Amendment.

*By the Court.*—Judgments affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

9