COURT OF APPEALS
DECISION
DATED AND FILED

April 9, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP854-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF265

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

STEVEN ROBERT SEEKAMP,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for St. Croix County: SCOTT R. NEEDHAM, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Steven Seekamp appeals from a judgment convicting him of possession of methamphetamine, as a repeater, and maintaining

a drug trafficking place. He also appeals from an order denying his motion for postconviction relief. Seekamp argues that the circuit court erred by determining that his trial counsel did not render ineffective assistance of counsel. We conclude that Seekamp's trial counsel did not provide constitutionally ineffective assistance. Accordingly, we affirm.

## BACKGROUND

¶2    According to the criminal complaint, Sergeant Charles Coleman and another officer with the St. Croix County Sheriff's Office conducted an "Act 79 search," *see* WIS. STAT. § 973.09(1d) (2021-22),[1] of Seekamp's residence and found methamphetamine and drug paraphernalia. During this time, Seekamp was on felony probation for possession of methamphetamine. Based upon the items located during the search of Seekamp's residence, he was charged with one count of possession with intent to deliver more than ten grams but not more than fifty grams of methamphetamine, as a repeater, and one count of maintaining a drug trafficking place.

¶3    Prior to trial, Seekamp's trial counsel filed a demand for discovery from the State and received Coleman's body-worn camera footage. The footage contained Coleman's encounter with Seekamp, including the search of his residence, but it did not include an earlier incident involving Coleman and another individual, Royale Harris, which prompted law enforcement to search Seekamp's

---

[1] 2013 Wis. Act 79 ("Act 79") created several statutes authorizing law enforcement to search a probationer's person and his or her property upon reasonable suspicion. *See State v. Anderson*, 2019 WI 97, ¶22, 389 Wis. 2d 106, 935 N.W.2d 285.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

2

residence. After receiving the body-worn camera footage of Coleman's encounter with Seekamp, his trial counsel did not inquire with the State about the existence of additional body-worn camera footage.

¶4 Seekamp's trial counsel filed a motion to suppress evidence obtained as a result of the search of Seekamp's residence, arguing that law enforcement: (1) did not verify Seekamp's probation status prior to the search; (2) did not conduct the search "in a reasonable manner"; and (3) lacked reasonable suspicion that Seekamp was "committing, [was] about to commit, or ha[d] committed a crime or a violation of a condition of probation." *See* WIS. STAT. § 973.09(1d).

¶5 At the suppression hearing, Coleman testified that he was dispatched to a domestic incident involving two individuals—Harris and Abigail Medeiros— "fighting" in a vehicle. Upon his arrival, Coleman determined that Medeiros had previously left the scene of the domestic incident but had returned to the scene in a vehicle driven by Seekamp. Coleman explained that Seekamp "is well-known through[out] St. Croix County" for his prior drug use, and Coleman stated that he discovered, while at the domestic incident, that Seekamp was on felony probation for possession of methamphetamine. Conditions of Seekamp's probation included "not being in the presence of another individual [who is] using controlled substances," not being in a residence where controlled substances are located, and maintaining absolute sobriety. Coleman also spoke with Seekamp's probation agent to confirm his probation status and address.

¶6 Coleman further testified that he spoke with Harris at the location of the domestic incident, and that Harris informed Coleman that he and Medeiros had been smoking methamphetamine "multiple times over the last few days" and that

they were on their way to "meet a person named Steve living in a blue house on County Road D … to smoke methamphetamines." Coleman stated that another officer at the domestic incident location "determined that [Harris and Medeiros] were arguing about whether or not to go to a person's house … to smoke methamphetamines."[2] Coleman additionally discovered that Seekamp lived on County Road D, roughly one mile north of the location of the domestic incident.

¶7 At some point after Coleman's arrival at the domestic incident location, Seekamp and Medeiros left. Coleman testified that he then drove to Seekamp's residence. After knocking on Seekamp's door and observing Medeiros inside the residence, he believed that Seekamp was "either about to, had used … or was going to use methamphetamine" with Medeiros. Coleman searched the residence and located methamphetamine. The circuit court denied the suppression motion.

¶8 The case proceeded to a jury trial, where it was first established that Coleman's body-worn camera recorded the conversation between him and Harris at the location of the domestic incident. Specifically, Seekamp's trial counsel asked Coleman on cross-examination whether he had worn his body camera and if it was recording during his conversation with Harris. Coleman responded that it was with him that day and that he believed it had recorded the conversation. During a subsequent break in the trial, the parties discovered that the footage of

---

[2] In Seekamp's reply brief, he argues that what the other officer learned at the location of the domestic incident is "not a fact in evidence" because that officer "never testified at the suppression hearing." However, testimony *is* evidence, and Coleman testified as to what the other officer told Coleman he had learned from his discussion with Harris and Medeiros. Seekamp's trial counsel did not object to Coleman's testimony on this topic, and Seekamp does not develop any argument on appeal that his trial counsel was ineffective by failing to object. Therefore, we consider the testimony as evidence presented at the suppression hearing.

Coleman's interaction with Harris had been destroyed after it was attached to a case number associated with the domestic incident.

¶9 After learning that the footage of Coleman's interaction with Harris had been destroyed, Seekamp's trial counsel moved to dismiss the charges against Seekamp, despite acknowledging that it was "unclear" if the body-worn camera footage was "exculpatory o[r] inculpatory." Alternatively, Seekamp's trial counsel requested that the circuit court order a curative jury instruction to address the State's failure to comply with discovery requirements. The court denied the motion to dismiss the charges but it granted the motion to provide the curative jury instruction. The jury ultimately found Seekamp guilty of possession of methamphetamine,[3] a lesser-included offense of possession with intent to deliver methamphetamine, and guilty of maintaining a drug trafficking place.

¶10 Seekamp filed a postconviction motion claiming that his trial counsel provided ineffective assistance by failing to: (1) seek body-worn camera footage from Coleman's interaction with Harris; (2) adequately argue the motion to suppress; and (3) adequately argue for dismissal of the charges at the jury trial. The circuit court held a *Machner*[4] hearing and, afterward, denied Seekamp's motion. Seekamp now appeals, raising the same three ineffective assistance of counsel arguments argued in his postconviction motion.

---

[3] At sentencing, the circuit court determined that the State sufficiently established that Seekamp was a repeat offender.

[4] *See* *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

## DISCUSSION

¶11 To establish ineffective assistance of counsel, a defendant must prove both that his or her counsel was deficient and that his or her counsel's deficient performance prejudiced the defense. *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93. To prove that defense counsel's performance was deficient, a defendant must demonstrate that it fell below an objective standard of reasonableness. *Id.*, ¶38. There is a presumption that counsel's conduct fell "within the wide range of reasonable professional assistance," and "[c]ounsel's decisions in choosing a trial strategy are to be given great deference." *Id.* (alteration in original; citation omitted).

¶12 "To establish that deficient performance was prejudicial, the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, ¶39 (citation omitted). However, "a defendant need not prove the outcome would 'more likely than not' be different in order to establish prejudice in ineffective assistance cases." *State v. Sholar*, 2018 WI 53, ¶44, 381 Wis. 2d 560, 912 N.W.2d 89 (citation omitted). "If the defendant fails to satisfy either prong, we need not consider the other." *Breitzman*, 378 Wis. 2d 431, ¶37.

¶13 We review a circuit court's ineffective assistance of counsel decision following a *Machner* hearing as a mixed question of law and fact. *See Breitzman*, 378 Wis. 2d 431, ¶37. "The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo." *Id.*

6

## I. Body-worn camera footage

¶14 Seekamp first argues that his trial counsel provided ineffective assistance by failing to inquire with the State about the existence of additional body-worn camera footage. According to Seekamp, had his trial counsel obtained the footage and realized that Harris never made an incriminating statement about Seekamp and his drug use, law enforcement would have lacked a constitutionally valid basis to search Seekamp's residence.

¶15 We conclude that Seekamp's trial counsel did not perform deficiently by failing to inquire with the State about the body-worn camera footage related to Coleman's discussion with Harris because trial counsel reasonably believed that the footage did not exist and, regardless, there was additional evidence that Harris had in fact incriminated Seekamp.[5]

¶16 Here, Seekamp's trial counsel explained at the *Machner* hearing his reasons for not seeking additional body-worn camera footage, which the circuit court found were "plausible." Trial counsel testified that he received discovery from the State after filing a demand for discovery, which included some body-worn camera footage. Afterward, Seekamp's trial counsel had no reason to believe that additional body-worn camera footage existed. In fact, trial counsel testified that he did not inquire further with the State about additional footage after receiving the footage of Coleman's interaction with Seekamp because he assumed that the State had forwarded him all of the footage from that day. According to

---

[5] As relevant here, defense counsel has a duty to make reasonable investigations. *See Strickland v. Washington*¸ 466 U.S. 668, 691 (1984). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.*

Seekamp's trial counsel, in his experience, "officers don't always turn on the body cam and I sometimes get partial body cam footage starting part way through an interaction." Additionally, trial counsel inquired with Coleman at the suppression hearing about whether the other officer at the scene had recorded that officer's conversation with Harris, to which Coleman stated that he had not "reviewed or heard" of any such recording.

¶17     Furthermore, Seekamp's trial counsel testified that he had reason to believe that Harris did in fact incriminate Seekamp. Specifically, trial counsel cited the dispatch report from the 911 call that Harris made for the domestic incident, wherein Harris mentioned either that he and Medeiros were smoking "dope" or that she was smoking "dope."[6] Harris's statement to Coleman was also corroborated by Harris's statement to the other officer at the domestic incident location and, later, by a statement Medeiros made to Coleman at Seekamp's residence. In particular, Medeiros told Coleman, prior to the search of Seekamp's residence, that she jokingly told Harris she was going to Seekamp's residence to "get high." On this record, the circuit court's finding that Seekamp's trial counsel's reasons for not seeking additional discovery were "plausible" is not clearly erroneous. Based on those reasons, trial counsel reasonably did not seek additional body-worn camera footage from the State.

---

[6] On appeal, Seekamp argues that the dispatch report stated that Harris and Medeiros wanted to go to a house to "get dope." According to Seekamp, "Smoke dope and get dope are not the same thing." Regardless of what Harris specifically said, the consensus is that he told the 911 dispatcher that he and Medeiros were going to a house to either obtain drugs or consume drugs. We do not see a material difference for purposes of Seekamp's ineffective assistance claim regarding the body-worn camera footage.

¶18     Seekamp also contends that Coleman's suppression hearing testimony was inconsistent with what he wrote in his police report and what he testified to at the preliminary hearing.  He further argues that the other officer did not write in his police report that Harris told him anything about smoking methamphetamines.  Seekamp appears to argue that these alleged discrepancies should have prompted his trial counsel to the need to conduct more investigation into the availability of additional body-worn camera footage.

¶19     We do not construe Coleman's police report or preliminary hearing testimony to be inconsistent with his suppression hearing testimony.[7]  First, the preliminary hearing testimony is nearly identical to the suppression hearing testimony.  In addition, although Coleman did not write in his police report that Harris stated that he and Medeiros were going to Seekamp's "to smoke methamphetamines," that notion can easily be inferred from the context of the report.  When the police report is considered in connection with the other evidence before Seekamp's trial counsel, it cannot be said that any minor discrepancies in the report would have led a reasonable attorney to request additional body-worn camera footage from the State.  Regarding the other officer's police report, that report concerned the search warrant obtained after law enforcement initially searched Seekamp's residence.  It was not a report concerning the domestic incident.

---

[7] Coleman wrote in his police report that Harris told him that he and Medeiros were "driving around to various drug houses to smoke methamphetamines. [Harris] stated he was sick of going to 'tweeker [sic] houses' and wanted to go back home."  In addition, Coleman wrote that Harris said he and Medeiros "argued about going to meet a 'Steve' at a blue house on Cty D approximately 1 mile north" of the domestic incident.  According to the police report, Harris and Medeiros pulled over off of the highway and Medeiros "ran north … to the blue house."  At the preliminary hearing, Coleman testified that Harris told him that he and Medeiros were going to "Steve's house to smoke methamphetamines."

¶20 To the extent Seekamp is criticizing his trial counsel for not requesting the body-worn camera footage until midtrial, we conclude that such an argument is without merit. Trial counsel testified that when he asked Coleman at trial about the footage, he "thought [he] knew the answer" and was surprised by Coleman's response. He added that he intended to raise the fact that Coleman had "a body cam but didn't turn it on, as a way to hurt [Coleman's] credibility." Again, the circuit court found this reasoning "plausible," and Seekamp's trial counsel's strategy was not unreasonable.[8]

¶21 We therefore conclude that Seekamp's trial counsel did not perform deficiently by failing to inquire with the State about the body-worn camera footage from Coleman's discussion with Harris. Accordingly, we reject Seekamp's assertion that the circuit court erred by concluding that his trial counsel did not provide ineffective assistance in that regard.

## II. Motion to suppress

¶22 Next, Seekamp argues that his trial counsel provided ineffective assistance of counsel by failing to adequately argue the motion to suppress the evidence derived from the search of Seekamp's residence. Specifically, Seekamp contends that his trial counsel's argument was vague and that he "never told the

---

[8] Seekamp argues on appeal that his trial counsel's desire to attack Coleman's credibility with the lack of body-worn camera footage of Harris's interaction is "nonsense" because trial counsel "did not once refer to the officer's credibility" in his closing argument. However, it was discovered prior to closing arguments that Coleman had his body-worn camera on during his interaction with Harris. The State, not Coleman, failed to turn over that evidence to the defense, and Seekamp's trial counsel raised that point during his closing argument. Also, as a result of the State's failure to turn over the footage, the circuit court provided the jury with a curative instruction.

[circuit] court why" law enforcement lacked reasonable suspicion to search Seekamp's residence.

¶23 As relevant here, WIS. STAT. § 973.09(1d) provides that law enforcement may search an individual, his or her residence, and any property under his or her control if that individual is on probation for a felony and if law enforcement "reasonably suspect[] that the person is committing, is about to commit, or has committed a crime or a violation of a condition of probation." *Id.* "The question of what constitutes reasonable suspicion is a common sense test: under all the facts and circumstances present, what would a reasonable police officer reasonably suspect in light of his or her training and experience." *State v. Young*, 212 Wis. 2d 417, 424, 569 N.W.2d 84 (Ct. App. 1997).

¶24 We conclude that Seekamp's trial counsel did not perform deficiently by failing to argue the motion to suppress in a different manner because, in all events, law enforcement had reasonable suspicion to search Seekamp's residence.

¶25 It is clear from the suppression hearing testimony that prior to the search of Seekamp's residence, Coleman had established that Seekamp was on felony probation for possession of methamphetamine and that conditions of his probation included "not being in the presence of another individual [who is] using controlled substances," not being in a residence where controlled substances are located, and maintaining absolute sobriety. In addition, Seekamp was with Medeiros at the location of the domestic incident, and the two later left the scene together. Harris told Coleman that he and Medeiros were arguing about whether to smoke methamphetamine at someone's residence—a fact supported by Harris's

comments to the other officer, the dispatch report, and Medeiros's statement to Coleman at Seekamp's residence.

¶26 Therefore, Coleman reasonably suspected that Seekamp was violating a condition of his probation by being in the presence of Medeiros while she was using methamphetamine, by being in a residence where controlled substances might be located, and by not maintaining absolute sobriety. Coleman further reasonably suspected that Seekamp was committing, was about to commit, or had committed a crime by partaking in the consumption of methamphetamine or possessing the same.

¶27 Seekamp further argues that the strategy at the suppression hearing was to prove that Coleman "had decided to conduct an Act 79 search before he even spoke to Harris" in violation of the clause in WIS. STAT. § 973.09(1d) forbidding unreasonable, arbitrary, capricious, or harassing searches, but that his trial counsel "never explained" this argument to the circuit court. The State argues that Coleman's subjective intentions are irrelevant to the validity of the Act 79 search. *See* ***State v. Sykes***, 2005 WI 48, ¶¶29-31, 279 Wis. 2d 742, 695 N.W.2d 277 (stating that a Fourth Amendment analysis concerns "objective facts known to the officer," not the officer's subjective motivations). Seekamp does not respond to the State's reliance on *Sykes*, and we therefore deem Seekamp to have conceded the issue. *See* ***Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments may be deemed conceded). We therefore conclude that the court did not err by finding that Seekamp's trial counsel did not perform deficiently by failing to argue the motion to suppress in a different manner because law enforcement had reasonable suspicion to search Seekamp's residence.

### III. Motion to dismiss

¶28    Lastly, Seekamp contends that his trial counsel provided ineffective assistance of counsel by failing to adequately argue the motion to dismiss. According to Seekamp, his trial counsel should have argued that Seekamp's due process rights were violated because the State acted in bad faith by failing to preserve evidence that was "potentially exculpatory." *See **State v. Luedtke***, 2015 WI 42, ¶53, 362 Wis. 2d 1, 863 N.W.2d 592.

¶29    We conclude that even if Seekamp had demonstrated that his trial counsel performed deficiently by failing to adequately or differently argue the motion to dismiss, Seekamp failed to show that he was prejudiced by that deficient performance. When a defendant demonstrates that the State acted in bad faith by failing to preserve evidence, the court may impose a sanction on the State. ***State v. Huggett***, 2010 WI App 69, ¶25, 324 Wis. 2d 786, 783 N.W.2d 675. "[T]he imposition of a sanction is within the court's discretion." *See **id.*** (citation omitted).

¶30    In order to prove prejudice, Seekamp's trial counsel would have had to persuade the circuit court at trial that dismissal was the only appropriate sanction. As the circuit court stated in its order denying Seekamp's postconviction motion, however, Seekamp failed to demonstrate that there is a reasonable probability that the circuit court would have granted the motion to dismiss—as opposed to sanctioning the State by providing a curative jury instruction—had the motion to dismiss been argued differently by his trial counsel. Any value that the body-worn camera video had was not central to the State's case or to Seekamp's defense, as what Harris said or did not say to Coleman provided minimal value at the trial. Therefore, *why* law enforcement came to search Seekamp's house was of

limited evidentiary value because that fact was not being used to explain to the jury that Seekamp was selling methamphetamine (a fact the State failed to prove beyond a reasonable doubt). For example, Harris did not allegedly tell Coleman that he and Medeiros were going to purchase methamphetamine from Seekamp.

¶31 Seekamp relies on *Huggett* to argue that had his trial counsel effectively argued the motion to dismiss, the circuit court would have been inclined to dismiss the charges against Seekamp. We disagree that *Huggett* is factually similar to the case at hand. In *Huggett*, we concluded that the destroyed evidence was "highly relevant" to the self-defense issue at trial. *Id.*, ¶26. Here, as explained, what Harris said or did not say to Coleman had little to do with the charges against Seekamp.

¶32 To the extent Seekamp argues that the body-worn camera footage was exculpatory in that it would have resulted in law enforcement lacking reasonable suspicion to search Seekamp's residence, we disagree. As noted, the jury was not tasked with determining if law enforcement had reasonable suspicion to search Seekamp's residence. And, as we explained earlier in this opinion, *see supra* ¶¶17, 25, Harris made at least two other statements to law enforcement about going to Seekamp's residence to smoke methamphetamine. Compounded with the other evidence previously discussed, *see supra* ¶25, law enforcement would have had reasonable suspicion even without Harris giving that same information to Coleman.

¶33 Further, even if we assume the body-worn camera footage contradicted Coleman's testimony, it would have, at most, undermined his

credibility—something the circuit court permitted with the curative jury instruction.[9]  There was ample evidence admitted at trial that was relevant to the charges against Seekamp.  Namely, the State introduced evidence that Seekamp resided at the residence and law enforcement found methamphetamine and drug paraphernalia in the residence.  We therefore conclude that Seekamp was not prejudiced by any deficient performance on his trial counsel's part in failing to differently or adequately argue for dismissal of the charges against him.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[9] The jury instruction provided, in part, that the jury could "take the State's failure to provide this camera footage into consideration when assessing the credibility of testimony related to the interview."